A. W. STONE, plaintiff in error, *vs.* HENRY S. WETMORE, defendant in error.

1. The Judge may refuse to allow a writ of *quo warranto* filed unless it makes out a *prima facie* case in favor of the petitioner.   (R.)

2. General Terry did not, by his removal of Wetmore, as the Ordinary of Chatham county, and appointment of Stone thereto, convey such a title to the office as, upon the application of Stone to the civil Courts, they could enforce under the Constitution and laws of this State.

3. The facts recited in the petition for *quo warranto,* to-wit: that Stone, after the removal of Wetmore by General Terry, was appointed to the office, and filed his bond and was commissioned by the Governor, did not confer such a right to the office as Courts can recognize.   The commission did not convey more than the order of appointment upon which it was based, and that appointment expired with the powers that gave it existence.

4. Appointments, under the Reconstruction Acts of Congress, to civil office by the General Commanding, was not by virtue of the Constitution of the State, but by the power of the Acts of Congress, and did not confer upon the incumbents any title to the same longer than the Acts themselves were of force.

*Quo Warranto.*   Reconstruction Acts.   Military appointments.   Before Judge SCHLEY.   Chatham county.   February, 1871.

The facts are in the opinion.

WILLIAM DOUGHERTY AND A. SLOAN, for plaintiff in error.

HARTRIDGE & CHISOLM ; JACKSON, LAWTON & BASSEN-
GER, for defendant.

LOCHRANE, Chief Justice.

It appears from the record in this case that, on the 29th of
April, 1870, the Ordinary of Chatham county, who had been
duly elected by the people, and commissioned by the Gov-
ernor, was removed by order of General Terry, who was at
the time commanding the Third Military District, and the
plaintiff in error, Mr. Stone, was, by order of General Terry,
appointed Ordinary, and he, under such appointment, on the
2d May, 1870, executed and filed his bond, and took the oath
of office, and was commissioned as the Ordinary by the Gov-
ernor of this State.   On the 5th December, 1870, Wetmore,
the Ordinary, who had been thus removed, took possession of
the office, and went on in the discharge of the duties imposed
under the Constitution and laws of this State.

The present case arises upon the application for *quo war-
ranto,* by Stone, in the premises, calling upon Wetmore to
show by virtue of what right of law he holds the office, etc.
The Judge passed an order requiring Wetmore to show cause,
and he answered by showing: 1st. That the petition for *quo
warranto* presented no legal claim to the office.   2d. That,
when he was removed, he was acting as said Ordinary by
virtue of his election under the present Constitution and laws
of this State, and his commission in pursuance thereof; and
3d. Because Mr. Stone was disqualified to hold the office,
being United States Commissioner for United States Courts.

Upon the hearing, the Judge refused leave to file the in-
formation of *quo warranto,* and this constitutes the ground of
error assigned upon which the judgment of this Court is
invoked.

1. The first question raised is as to the error committed in
refusing leave to file, etc.   Code, section 237, recites the
power of the Superior Courts " to grant for their respective

Circuit Courts writs of *certiorari, supersedeas, quo warranto,"* etc. Section 3145 declares the writ *may* be granted at any time on *proper showing made.* And section 3147 prescribes that it may issue to inquire into the right of any person to any public office, the duties of which he is in fact discharging, but must be granted at the suit of some person either claiming the office or interested therein."

It will be seen, by our statutory provisions, that the ancient writ of *quo warranto,* which was in the nature of a writ of right, for the king against any one claiming or usurping any office, franchise or liberty, has gone into disuse; and the granting of the writ, of leave to file, is now a question for the sound discretion of the Court, based on the *"proper showing made."* In England, the rule of Hilary Term, 1827, which was intended to limit the pleadings authorized by statute, 9 Anne, c. 20, requires objections intended to be made to the title of the defendant, to be specified in the rule to shew cause. The spirit of the law contemplates the right of the Court to refuse the writ. At the instance of a claimant to an office, it is, in no relation, a right. But the petition for leave must set out good grounds to invoke the leave of the Court. Another important element in the decision of this question is, that the petitioner appeals to the Courts for the assertion of his rights. He presents his complaint under the Constitution and laws of this State, and therefore he must show, in his petition, something upon which the Court, exercising its constitutional functions, can adjudge his right to the office. For, under this application, and the decision of the Court, we are not called on to decide the validity of Wetmore's right to the office, but the right which Mr. Stone presents. That right is predicated upon the Acts of March and July, 1867, and supplemental Acts, by which Georgia is placed in the third military district, and the commandant of such district is clothed with certain powers, among the enumeration of which was the right to suspend or remove from civil office and detail or appoint incumbents to

discharge the duties.   The constitutionality of these Acts are put in question, as the primary proposition, to establish the fact that General Terry had no right to remove Wetmore, and consequently no right to appoint Stone.   This Court does not deem it necessary to decide this question, in the view we take of the case.

I need not, then, go through with the powers incident to the National Congress, over the subject of reconstruction. We recognize the fact that the State, after the surrender of the armies of Generals Lee and Johnston, was in a condition provided for by no constitutional provision.   The framers of the United States Constitution did not foresee, and did not provide for the *status* of any of the States after its subjugation to the municipal sovereignty of the nation.   It was not contemplated, and therefore *stood*, where some power necessarily had to act, and the law-making power assumed the right, upon what grounds need not be determined.   When William of Prussia, from his head-quarters at Versailles, on the 15th December, 1870, decreed a government for Alsace and Lorraine, it might be conceded that he had no warrant of power for the basis of such a decree, except upon the right of war.   And when people invoke war as the arbiter of national rights, the conqueror, by power invoked, exercises powers not based on constitutions or laws.   The trouble has been in this country trying to harmonize war and peace measures, and setting up a constitutional power to do what fell from the effects of a surrender.

2. By these acts of settlement, commonly called the Reconstruction Acts, Congress provided for the powers exercised in this case by General Terry, and we need not discuss the effect.   As long as he was clothed with the power *de facto* or *de jure*, the result would be the same.   These Acts conferred the power to remove, and he did it.   The cause is not before us, and it is immaterial.   Under the law of Congress Wetmore was removed, and under the same law Stone was appointed.   It is upon the title conferred by the appointment

only, that I propose to treat. What effect of duration did it have, made under the laws that authorized it? Suppose General Terry had detailed a soldier to the duties. This was within the letter of the law, just as much as the appointment of Mr. Stone. Would it be properly inferred from the appointment, that this was filling a vacancy under the Constitution and laws, and that such detailed soldier would continue in office after the laws by their operation had expired, under which he alone could pretend to discharge the functions? Now, Stone can stand in no better place than a detailed soldier would under the laws. Suppose General Terry had removed a Judge of the Supreme Court, and detailed a Colonel of a regiment to discharge the duties, and he did so, and subsequently the removed Judge assumed his duties under the Constitution and laws, and such Colonel appealed to the civil law, through the interposition of the civil Courts, to restore him, what *title* would he have to the office by the appointment of General Terry? We think none.

3. But in this case, the view may be taken, that when General Terry came, clothed by the National Congress with powers to remove, if he did remove, that act destroyed all the rights of the occupant, and that his removal under such delegated power had all the effect of a removal by the powers known to the laws—in other words, occasioned the same vacancy—and his power to fill was commensurate with our Constitution and laws, which he came to enforce; that he carried on the State Government under the Acts of Congress, and the appointment of Mr. Stone was in fact an appointment under the Constitution to fill a vacancy; and that Stone derived by such appointment exactly what he would have derived now by appointment if Wetmore had died or resigned, and the Governor had appointed him to fill the place. In our opinion, such is not the law. Georgia, while under military rule and Reconstruction Acts, had to carry out the civil administration under the permission or coercion policy, as the case may be, by which she was governed. But when

Stone *vs.* Wetmore.

she was entitled to representation and, and in fact became a member of the Union, then she was entitled to equality and independence among her sisters. The officials, breathed by the times into place, went out with their authors; the appointees dropped the ermine when their authors dropped the sceptre; the commission to constitutional offices, which the General ordered, fell when the headquarters were removed with the Acts that empowered them. No other theory would be consistent with the Reconstruction Acts themselves; for the full power invoked by them had one object only, the restoration of the States. The Generals sent to carry them into effect, came only to accomplish the purposes of the Acts as a part of the political government. And these incidental powers of removal, etc., were to clothe the military with authority to remove those who thwarted the main and declared purpose. When the purpose was accomplished, the end was attained, and the whole *status* fell back into its original condition, so far as it was attainable. If General Terry had simply suspended Wetmore, would he not have assumed his duties when the powers that suspended him were themselves suspended? Now, by the record, he is in his office; he was constitutionally elected. Mr. Stone claims it by title of General Terry's appointment. The Judge held this appointment did not confer such a title to the office as invoked the enforcement of the civil powers of the Court, and the fact that the Governor, acting under the superior power of General Terry, did give a commission to Mr. Stone, does not change the effect, for the officer for the time was the creation of the General Commanding, and the Governor's commission could not convey any right, not inherent in the order of appointment consequent upon the removal.

4. The right of appointment, if it existed, existed in the power conferred by the Acts of Congress, and not by virtue of the Constitution and laws of this State. The government was not half civil or half military, nor part under the Constitution of the State and part under the Acts of Congress.

The government was military, and the continuance of the civil power was sustained by its authority, and while acting subordinate it was not an independent, but only a permissive existence. And its acts outside the Constitution derived no inherent power from being nominally civil. Therefore, we hold that the commission issued by the Governor did not, in a constitutional view, confer any power not derived by the naked military appointment of General Terry.

And, upon the facts presented, we are of opinion that the petitioner did not present such a cause, to a Court of law, as entitled him to fill the office of Ordinary of Chatham county, under the Constitution of this State.

Judgment affirmed.