# HUSSEY *et al. vs.* GALLAGHER *et al.*

Where a bill for injunction was brought by certain members of a corporation, chartered by the superior court for promoting the cause of temperance and other benevolent objects among the Roman Catholics, against certain other members of said corporation, who were the officers thereof *de facto,* if not *de jure* ; and where the bill was predicated upon the charge that these defendants thereto were not *de jure* officers of said corporation, and were not such officers because not elected and appointed pursuant to law, and not elected lawfully because the constitution of the society so incorporated required the election to be held at the regular meeting immediately preceding the anniversary thereof, and the by-laws required all regular meetings to begin at half-past seven o'clock and end at ten o'clock P. M.; and it was alleged that, though elected at the regular meeting preceding the anniversary, the said officers were elected after ten o'clock P. M.; and that the members of the council, charged with the chief administration of police duties and constituting a sort of police court, were appointed by the president so illegally elected, and presided over by him; and that these officers and this council were proceeding to enforce discipline illegally against complainants, in the collection of fines and threatening expulsion unless they were paid; and that the constitution and by-laws required the members to be practical Catholics, and the president was not a practical Catholic, because he had been deposed by the Roman Catholic bishop from his office as president of the society, and another appointed in his stead, and because of his contumacy in holding on to his office he had been excommunicated from the church; and the prayer of the bill was for an injunction to restrain these officers *de facto* from exercising the duties of their respective functions; but where it appears from the constitution, by-laws, answer and depositions, that the entire equity of the bill, if any, rested upon the regularity of the election of the acting president, and it was left in doubt whether he was elected before or after ten o'clock P. M.; and where it further appeared that the contest for president was between the leading complainant in the bill and the president elect, and that the said leading complainant and his supporters participated in the said election, and after an exciting contest were defeated by a vote of 38 to 29, and that a very large majority of all the members of said corporation was present and participated therein, and others of the complainants were actually elected to office at said election, and no fraud in the management of said election is alleged or pretended, but all were permitted to vote without cavil or question; and where it further appeared that these officers so elected and appointed were in the discharge of mere police and disciplinary duties under the

authority vested in such officers by the constitution and by-laws of the corporation, and the right of the president elect to the office he held *de facto* had been tested by a *quo warranto* against the bishop's appointee, and had resulted in favor of the president elect, and where the election of officers was annual, and therefore the complaint not irremediable, and where nothing in the charter or constitution or by-laws gave the appointing or deposing power to the bishop, but the ultimate right to rectify any abuse seems to be lodged in the majority of the members at their annual elections:

*Held* 1. A court of equity is slow to interfere in the mere police courts of a society incorporated for benevolent and charitable objects, and will not apply the harsh remedy of injunction except in cases clearly made out by proof, and where all other remedies are exhausted.

2. Under the facts above outlined, an injunction should not have been granted in this case.

3. By-laws which prescribe a trial before a select number of members appointed by the president and presided over by him, without the right of appeal, and even restricting witnesses to members of the society, and which prescribe that members shall be dropped without trial if fines imposed are not paid, (which fines the rules of the society impose), are not so unreasonable as to be declared null and void by a court of equity, and the officers restrained by injunction from enforcing them—especially if passed upon, approved and sanctioned by the charter.

Equity. Injunction. Corporations. Before Judge TOMP-KINS. Chatham County. At Chambers. September 3, 1878.

The head-notes and opinion contain all the facts necessary to an understanding of this case, except the following extracts from the charter, constitution and by-laws of the society:

### CHARTER.

" GEORGIA—Chatham county. To the superior court of said county:

" The petition of Rev. Charles C. Pendergast * * * * and others, of the county and state aforesaid, in behalf of themselves and their associates, respectfully sheweth that they constitute a benevolent association whose field of operation and place of doing business is the county of Chatham aforesaid; that the objects of their association are the promotion of temperance and the temporal and spiritual welfare of the members; that they desire an order declaring themselves and their associates and successors incorporated under the corporate name and

style of "St. Patrick's Total Abstinence and Beneficial Society, of Savannah, Georgia," for the term of twenty years, under the constitution and by-laws heretofore adopted by them; with full power to sue and be sued ; to buy, hold, sell and convey such property, both real and personal, as may be necessary or useful in promoting or carrying out the purposes of their organization; to make such rules and regulations, and such amendments to their said constitution and by-laws as they may deem proper and necessary; to have a common seal, and all other rights, privileges and franchises as are incident to corporations created by the courts, according to the provisions of the statute of said state in such case provided. As the object of the society is not to make money or realize pecuniary profit, they have no capital stock, and none is paid in.                                         J. R. SAUSSY,

Attorney for petitioners."

### "ORDER."

" On reading the petition in the above case, the court being satisfied that the application is legitimately within the purview and intention of the Code of Georgia in that behalf provided, and that the terms of the law have been in all respects complied with, it is ordered that the said application be granted; and the said petitioners, with the other members of their said society and their successors, are hereby declared incorporated and made a body politic, by the name and style of "St. Patrick's Total Abstinence and Beneficial Society, of Savannah, Georgia," under the constitution and by-laws heretofore adopted by them, for the full period of twenty years, with the privilege of renewal; with full power and authority to amend their said constitution and by-laws, and to make and adopt such rules and regulations as they may deem necessary and proper, not inconsistent with the laws of the land; to sue and be sued, to buy, receive, take, hold, sell and convey, such property, real and personal, as may be necessary or useful in promoting or carrying out the purposes of their organization; to have a common seal, and to be invested with all other rights, privileges and franchises as are incident to corporations created by courts as provided by law."

### CONSTITUTION.

#### ARTICLE III.—OFFICERS.

"SEC. 1. The officers of this society shall consist of a president, first vice-president, second vice-president, secretary, treasurer, two standard-bearers, marshal, and a sergeant-at-arms, who shall be elected annually at the regular monthly meeting previous to the anniversary of the society."

### BY-LAWS.

#### ARTICLE VII.—MEMBERSHIP.

SEC. 1. No person shall be eligible to membership who is under eighteen or upwards of fifty years of age, who does not possess a good moral character, or who is in any way incapacitated from earning a

livelihood, and who is not of sound, healthy constitution, or is in any way debilitated, or who is a member of any other temperance society in this city. On detection of which he shall be expelled from the society by the council. He must also be a practical member of the Catholic church. No person shall be received into membership whose wife or himself deals in or sells malt or spirituous liquors, wines, cordials, or any kind of intoxicating drinks, nor allowed to remain in it if either of them should commence to do so."

\* \* \* \* \* \* \* . \* \* \*

## ARTICLE X.—COUNCIL.

"SEC. 1. The president of the society shall appoint, semi-annually, a council, composed of eight members, exclusive of himself, over which he shall preside at all meetings, and have the casting vote, or, in his absence, one of the council, appointed for that purpose, as judge, and they shall determine on matters of difference between the accused and the accuser; they shall hear such evidence as may be brought before them (by members only), for each party; they shall give their calm consideration to the case before them; they shall hear no evidence but that given on the actual knowledge of the person who testifies; they shall cast from their minds all other considerations except that which is before them, and give a fair and impartial verdict according to their knowledge, but always adhering strictly to the rules of the society and the article under which the case is tried, each member giving his opinion distinctly when asked for by the chairman, and from its decision, in all cases duly investigated, there shall be no appeal. Not less than two-thirds of its members shall constitute a quorum.

"SEC. 2. The members accused shall be notified by the secretary to attend the council meeting, setting forth the charges made against them, and by whom; should they fail to attend when notified, or neglect to send a satisfactory excuse for non-attendance, they shall be forthwith expelled from the society.

"SEC. 3. Any member of council absenting himself from its meetings without sufficient cause shall be fined, or should any member fail to attend two successive meetings of council, he shall cease to be a member thereof.

\* \* \* \* \* \* \* \*

"SEC. 7. The member so fined before council shall be notified by the secretary, and if said fine be not paid within three days after the day of trial, said member shall be struck off the roll.

\* \* \* \* \* \* \* \*

## ARTICLE XIII.—MEETINGS.

SEC. 1. The regular meetings of this society shall be held on the first Tuesday of each month. The hours of meeting of this society shall be at eight o'clock P. M. to half-past ten P. M., from the first Tuesday in May to the first Tuesday in October, and from seven and a half o'clock

P. M. to ten o'clock P. M., from the first Tuesday in October, to the first in May."

\* \* \* \* \* \* \* \*

R. E. LESTER, for plaintiffs in error cited as follows : Improper parties to bill, Ang. & Ames on Corp., 312; 11 *Ga.*, 556. Bill multifarious and indefinite, Story's Eq. Pl., §§271, 241; 22 *Ga.*, 4; 16 *Ib.*, 164. Equity will not interfere, 1 *Kelly*, 43; 38 *Ga.*, 627; Code, §3210; Ang. & Ames on Corp., 312; 1 Phil., 790. By-laws good, Code, §1679 ; 1 *Kelly*, 43 ; 12 *Ga.*, 404 ; 38 *Ib.*, 542, 608; 40 *Ib.*, 98; 6 *Ib.*, 166 ; 25 *Ib.*, 316.

A. P. & S. B. .ADAMS, for defendant, cited as follows: Equity will grant relief, Field on Corp., §65 and note 2, §§245, 408, 141; 6 Allen, 52 ; Kerr on Inj., 547. Oppressive by-laws, Field on Corp., §296 and note 1; Ang. & Ames on Corp., §359, 409–414.

JACKSON, Justice.

1, 2. The facts reported and the syllabus will furnish a correct idea of the views of this court upon the points made in this application for an injunction. It is scarcely necessary that I add anything.

I will say, however, that the basis of all equity jurisdiction, except in regard to infants, is property. Money or property is the basis of its interference. Therefore, with merely honorary offices or temperance societies, it does not interpose by injunction. Kerr on Inj., chap. 1, p. 1. There is no salary attached to these offices.

It may be well to remark, too, as the points presented are new, and the application to restrain the officers *de facto* of such a corporation as this is quite rare, that equity, even if there were salaries attached to these offices, will not usually, perhaps never, interfere in such cases, but will leave the contesting parties, so far as the election is concerned, to their remedy by an information in the nature of a *quo warranto*. Field on Corporations, §409; 32 Barbour, 55; 11, Paige,

118.   Nor will relief be granted by injunction in such cases on the ground of fraud in the election of officers, even if fraud had been charged in this bill, which was not done. See same authorities.

In the case before us a *quo warranto* was sued out against the bishop's appointee; and the answer thereto being a disclaimer on his part, the result was, that the plaintiff in error here was left in the full possession of the office of president.

Again, the main complaint of the complainants in this bill rests upon the illegality of the election of Hussey as president; for if he was legally elected, the council was legally appointed, and if so, the complainants are merely disappointed and refractory members of the corporation.

Was he properly or legally elected?

He was elected by a majority vote at the regular meeting when a quorum, a very large majority of members was present; and the most active of the complainants was his competitor, and was present, and was defeated.   The only complaint is that the election was after ten o'clock, about which fact the testimony is conflicting.   But really it would seem immaterial.   These complainants participated and are estopped from denying the legality of the election.   Besides, if they could not complete the elections by ten o'clock, then an adjourned meeting could be held for that purpose; and this was done as appears of record; and this record was kept, too, by one of the complainants, who was the secretary. See Field on Corporations, §230.   The will of the majority was the law of the case and of the election.   Field, 226, *et seq*.

If there was anything illegal in the election, there can be no doubt that *quo warranto* was the remedy.   Field on Corporations, §457, and cases cited.

The president being legally elected, these people who complain and refuse to meet and act under him are simply refractory and disobedient, and ought to be dropped, if they do not pay their fines, as the by-laws prescribe.   The coun-

cil, too, to try them in certain cases, are clothed with the authority to do so, if properly appointed, and the members thereof were properly and legally appointed by the president, if he was properly elected, which seems to this court to have been the case.

. Therefore, the injunction restraining the officers from dropping the complainants, and the council from trying them, was granted without authority of law—unless the by-laws authorizing such action by the officers and council were contrary to the constitution and laws of the state, or to public policy, or so unreasonable as to require courts of equity to annul them.

By analogy to the directors of a company so incorporated, it appears further that *de facto* officers, unless guilty of some breach of trust, or some act *ultra vires*, will be sustained in their offices until regularly ousted; and, if in the discharge of the regular duties devolved by the charter upon them, they cannot be collaterally attacked. Field on Corp., §180; 6 Cowen, 26; 1 Hall, 191; 70 N. C., 348; 60 Ill., 244. So that if these officers and this council were merely *de facto* such, a court of equity would turn the complainants over to a regular attack upon them by *quo warranto*. But we have seen that as to these complainants they appear to be *de jure* entitled to their offices.

3.    The question then comes to this: are these by-laws so unreasonable in themselves that chancery will annul them? They are attacked because one of them provides that they, the members, shall be dropped unless they pay the fines imposed for delinquencies, and the other provides that they be tried before the council, without right of appeal, and that only members are allowed to testify before the council.  We see nothing objectionable in the first, because the amount of the fine is fixed in each case by the by-laws, and the penalty, therefore, or amount to be paid, cannot be increased or diminished; and, in the second, we cannot find anything so unreasonable as to require equity to enjoin procedure under it until it shall be decreed to be null and void

at the hearing.   It is better that a select committee try than
the whole body, and if the members wish it, and put their
wish in the by-law, why should not the world be shut out
to make charges against members, or to swear against them?
It may be doubted that these by-laws go so far as to exclude
all *witnesses* except members, but simply mean that charges
shall be brought only by members.   However that may be,
they are not so unreasonable as to be absolutely void.   And'
if the president be fairly elected by a majority vote, why
should he not preside over the council?   He does preside
over the whole body, why not over a committee of the body?

There can be no doubt that if these by-laws were so un-
reasonable as to shock ideas of right and justice, that equity
would interpose if property were at stake.   Field on Corp.,
296; but we apprehend that courts of equity would be
slow to interfere with the by-laws of an eleemosynary or
charitable or benevolent society like this, especially when
the constitution and by-laws had been passed upon and ap-
proved, and sanctioned by the act of incorporation.   It ap-
pears from the order or judgment of the superior court
which made this society a body politic under Georgia laws,
that the constitution and by-laws were already adopted, and
it had been acting under them before, and the court incor-
porated the society with this constitution and these by-laws
already in operation.   So that they have been judicially de-
clared legal and valid by the superior court of Chatham
county once, and, we incline strongly to think, properly and
rightfully.   Certainly, they are not so outrageously unrea-
sonable as to demand their annihilation by judicial interpo-
sition, and certainly there is nothing in them contrary to
the constitution and laws, or to the policy of the state.

There can be but little doubt from a view of all the facts
made in the case, that the corner stone of all this pile of
trouble was laid on the night when Gallagher was defeated
by Hussey for president; and thereupon the constitution,
by-laws, charter, everything seemed wrong to him and his
supporters; and by-laws under which they had all peacefully

prospered for years straightway appeared hideous, unjust and grossly unreasonable.   Consequently, first the church, and next the courts, were invoked to come to the aid of one side against the other.   The church did thunder her anathema, and Hussey was excommunicated; and the bishop deposed him from the presidency and elevated another in his stead.   But in this country there is no such union of church and state as demands that the courts should follow where the authorities of the church lead; and hence the *quo warranto* left Hussey installed and acting, notwithstanding the excommunication and the clerical deposition ; because, while the bishop had the power to excommunicate, he had none to make or un-make an officer in a corporation created by the state of Geor-gia.   Hussey may not be a *"practical"* or *"practicable"* Catholic—he does not seem to be obedient, at least—but whether he is or not is matter, so far as the law of the state will concern itself therewith, for the corporation—the crea-ture of the law—to deal with ; and is beyond the jurisdiction of a power, unknown, so far as corporate powers are con-cerned, to the laws of the state.

In respect to fraud and conspiracy there is no proof nor allegation of facts making out such a case in the record that we can discover, but the trouble arose out of the conflict over the election—matter of honor, not of money, even if fraud were properly charged.

It is much wiser, we think, that the courts should hold aloof in the internal struggles for place and position in such a corporate body as this, having for its objects moral improvement and reformed habits and charitable aid among its members.   If errors have been committed, they will rec-tify themselves.   It is better to submit to bad rulers for one year, than to defy laws we ourselves have made.

The next election for officers is held in March next, and if the Hussey party be so reduced in number as is repre-sented, and the power of the great church to which all the members belong be brought to bear upon the contest, their tenure of office will not last long.

Regarding the question purely in its legal aspect, and looking closely into the charter, constitution and by-laws of the corporation, and examining bill, answer and depositions, we are unable to discover any principle which requires a court of equity to lay the harsh hand of interference by injunction upon the elective police and disciplinary officers of this corporation, and therefore we reverse the judgment granting the injunction. Kerr on Injunctions, chapters 23, 24, and 28.

Judgment reversed.