Collins vs. Huff.

## COLLINS *vs.* HUFF.

1. Where application for leave to file a *quo warranto* is made solely with the view of ousting the incumbent of an office and installing the applicant therein, it must show title to the office in the applicant—no other-interest of his being alleged therein; and where his title to the office depends upon an election, he cannot assail that election as wholly invalid, because he thereby destroys his own title: therefore, all the grounds of his application which rest on the invalidity of the whole election are demurrable and will not be considered.

2. Allegations which rest on the illegality of votes on different grounds, must specify the number illegal on each ground, and, as far as possible, the names of all illegal voters, and wherein illegal, so that an issue may be formed on each allegation by the respondent, and the court may pass intelligently thereon: therefore, an allegation that two hundred and fifty persons voted illegally—some because not twenty-one, others who had not paid taxes, others non-residents of the city of Macon, and so on, enumerating ten classes of illegal voters without even indicating the number in any class or naming a single man—is wholly insufficient in law, and cannot be considered.

3. Though all the managers at two of the polling places were not free-holders, as required by charter, yet if they were appointed regularly by council, without fraud or collusion with the incumbent, they became *de facto* managers of the election, and the entire vote at those two polls should not be rejected, especially if it required the rejection of both to oust the incumbent and install the applicant, and at one of them a majority of the managers were, according to the allegation, freeholders, and therefore *de jure* as well as *de facto* managers—and if there be no allegation of any wrong having been done at those polls in admitting or rejecting votes by the managers so appointed and acting.

*Quo warranto.* Pleadings.   Elections.   Before Judge SIMMONS.  Bibb County.  At Chambers.  September 6, 1879.

Collins petitioned for the writ of *quo warranto* against Huff, the acting mayor of Macon.   He alleged that on December 14, 1878, an election for that position took place ; that he received a majority of the legal votes, and that Huff's election was not legal.   This charge of illegality was based on three grounds :

1. That illegal votes were cast for Huff.   Ten classes of illegal votes were mentioned—by persons living outside of the city, by minors, etc.—and the aggregate was stated at two hundred and fifty.   No names were mentioned, nor were the illegal votes apportioned among the classes.

2. That the election itself was illegal, and gave no title to Huff, because of want of compliance with the charter in regard to giving notice thereof, and because of illegal registration.

3. That two of the polling precincts were illegally managed, two of the managers at one and one at another not being freeholders, as required by the charter.

An answer was made, but not sworn to.   The court refused the prayer of the petition, and plaintiff excepted.

W. DESSAU ; JNO. L. HARDEMAN, for plaintiff in error.

BACON & RUTHERFORD ; SAM. JEMISON, for defendant.

JACKSON, Justice.

1. The application for leave to file the *quo warranto* rests purely upon the title of Collins to the office of mayor of Macon by virtue of the election the legality of which he attacks.   He shows no interest in the office as a citizen or otherwise on the face of the application.   His prayer is that Huff, filling an office to which he is entitled, be ejected, and that he, Collins, be installed ; and his allegation is that he is entitled because he was elected at the election held on

the 14th of December, 1878, and in the same paper it appears that Huff had been the prior incumbent, and there-fore, by virtue of the charter, held over, if not lawfully re-elected, unless another had been so elected.

Under such circumstances, so set out in his petition, he cannot assail the whole election as void, because in so doing he destroys the only title he has to the office, and the only interest which he alleges that he has therein. Hence those grounds which assail the entire election as illegal are de-murrable and cannot be considered. The King *vs.* Cudhiff, 6 Term R., 508; 2 Term, 771; 4 Term, 687.

This disposes, therefore, of the allegations of want of notice and proper registration which, if true and sufficient in law to have any effect, would defeat the whole election and leave Huff holding over and in office until a successor is elected. Code, §3203; 44 *Ga.*, 495.

2. But it is alleged that there were two hundred and fifty illegal votes cast which defeated him and elected Collins. This allegation as set out in the petition is also demurrable. It is too general. No issue can be joined on it, nor can the court pass on it intelligently. Ten reasons are given why these votes are illegal, or the voters are divided into ten classes—some non-residents, others not twenty-one years of age, others not naturalized, others not having paid taxes, and so on; and yet it is not alleged how many of the two hundred and fifty voted illegally because they were too young, or non-residents, or had not paid taxes, and no man who had voted illegally is named—not one. Suppose the court should hold that all the classes, nine of them did vote illegally, but the tenth did not, still no judgment could be rendered in favor of the applicant unless the nine classes embraced voters enough to change the result of the election as declared by the managers. That result gave Huff one hundred and twenty-nine majority. It was absolutely nec-essary, therefore, to show more than that number of illegal votes. If, then, it were held that payment of taxes not actu-ally demanded did not disqualify, or that the registry con

cluded that question, and nobody registered could be disfranchised on that ground, and if two hundred of the two hundred and fifty voters charged to be illegal for some of the ten reasons, were embraced in the class of non-payers of taxes, then Huff would still be elected by legal votes. So that it is essential to set out how many voters belonged to each illegal class. It would have been better, too, to set out their names, and to make distinct and clear specifications issuable as required in all our suits—plainly and distinctly setting out the cause of action—so that the other side might know what he had to meet. In this case not an illegal voter is named, and the number illegal on any specific ground is nowhere given. The allegation is wholly insufficient in law, and the judge was right to hold it to be so, and to refuse the motion to file on this allegation.

3. The remaining allegation is made in the amendment. It attacks the election at two of the polling places on the ground that at one of them one of three managers was not a freeholder, and at the other two were not. But they were all regularly appointed by the city council, and were *de facto* officers. No allegation is made of fraud in the appointment, or of collusion with Huff. No voter was rejected or allowed to vote illegally at either of these two places, so far as the allegation discloses what transpired. The managers acted fairly and legally, so far as appears. Both candidates participated in the election at these places, and both got votes, and neither made complaint until after the result, and long thereafter. The judge, therefore, did not abuse his discretion in rejecting the motion on this allegation; for the law rests a discretion in him. 45 *Ga.*, 495. On the contrary, it would have been abused, perhaps, if he had thrown out these two polling places, which embraced two entire wards, and let the others decide the election. All he could properly have done would have been to set aside the whole election and order a new one; and that he could not do, because thereby Collins' only title was defeated whenever the whole election became invalid and was set aside.

This case is unlike the Jonesborough case.   *Hawkins vs. Jonesborough*, decided this term.   There the town council appointed some of themselves to assess property for taxation.

It is rather like the case of *Hussy et al. vs. Gallagher et al.*, 61 *Ga.*, 86, where the parties complaining of irregularities participated in the election and were held to be estopped.

On the whole, we do not see how the judge could have done otherwise than to reject the motion to file the application, and the judgment is affirmed.

See, cited for plaintiff in error, Code, §1334; charter Macon, §12 *et seq.*; 70 Ill., R., 25; 14 *Ib.*, 476; 4 Tenn., 223; 4 Cowen, 103 and note, 383; High on Ex. Rem., §§732–53, 607, 621, 629, 691; Code, §3203; acts 1871, p. 118; Cons., art. 11, sec. 1, par. 1; art. 12, par. 5; art. 11, sec. 11, par. 1; Cooley, 601; *Johnston et al. vs. Macon*, last term; *Walker vs. Collins*, last term; City Code, §17; act September 30, 1870; Code, §1334; Cooley Cons. Lim., 603, *note;* 20 *Ga.*, 746; Brightly's Lead. Cases in Eq., 480.

For defendant in error, McCrary on Elec., §§281, 282, 115, 264, 266, 278, 276, 277; 44 *Ga.*, 495; Brightly's Elec. Cases, 466, 467, 276, 452, 448, *et seq.*; Dillon Mun. Corp., 136; Cooley Cons. Lim., 621, 203; 3 Cal. R., 480; 7 Ala., 114; act 11th Dec. 1871; 33 N. J., 195; 12 Mich., 508; 15 Ohio St., 137; 2 Tenn., 771; 4 *Ib.*, 687; 6 *Ib.*, 508; Const. of '77, art. 1, sec. 1, par. 2; 8 N. Y., 89; 14 Barb., 259; 5 Hill, 616; Code, §1334; 6 B. & Cress., 240; 61 *Ga.*, 91; 28 Penn. St., 9; 35 *Ib.*, 263; 45 *Ib.*, 396; 44 *Ib.*, 332; 15 Ohio, 114; Code, §§1329–1334; 33 N. Y., 198.

The answer not being sworn to, is not considered except as a demurrer.

Judgment affirmed.