THE STATE OF FLORIDA EX REL. JOSEPH H. SPAFFORD, PLAINTIFF, VS. S. J. KENNERLY, DEFENDANT.

An information filed in the name of the State, under the second section of the *quo warranto* act of February 2, 1872, Sec. 2, p. 846, McClellan's Digest, by a person claiming title to an office, is demurrable if it does not show that he is entitled to the office.

This is a case of original jurisdiction.

The facts of the case are stated in the opinion.

*Fletcher & Wurts*, for Relator.

### BRIEF FOR THE STATE.

1. The court has jurisdiction to determine this cause.

The election was contested before the City Council under the provision in Chapter 1688, Act of February 4, 1869, Section 10 : "The City or Town Council shall have power and authority to judge of the election returns and qualifications of its own members."

Nothing less than express words will oust the supervisory jurisdiction of the courts.

1 Dillon Mun. Cor., 202 (3d ed.), and cases cited.

2. Chapter 3850 of the Acts of 1889 does not make the payment of the poll-tax a prerequisite to voting at municipal elections held in 1890.

*a.* Section 2 of Chapter 3850 provides for a list being made of all the persons who have paid their capitation taxes for two years next preceding the year in which any general, special or municipal election is to be held. Section 3 provides that the Supervisor of Registration shall note on the registration books the names of all persons who have paid their capitation taxes and *only such persons shall be deemed qualified electors.* The proviso of Section 3 speaks of "the years" for which the tax is required. Section 5 provides for the production by any person of his poll-tax "receipt"

when his vote is challenged, because his name is not on the list provided in Sections 2 and 3. Thus the plain intention of the entire act down to Section 6 was to make the payment of the poll-tax for *two* years next prior to any election a prerequisite to voting. The only proviso in the act restricting this operation is contained in Section 6, which is as follows : "Provided that at the general election held A. D., 1890, only the capitation or poll-tax receipt of 1889 shall be required to be paid as a prerequisite to voting."

A proviso is to be so constructed as to take nothing out of the enacting clause which is not fairly within the terms of the proviso.

State *ex rel.*, vs. C. of Duval county, 23 Fla., 483.

The city election in Palatka on April 1, 1890, was not fairly within the terms of the above proviso.

*b.* Acts passed at the same session of the Legislature are to be taken *in pari materia.*

R. R. vs. R. R., 10 Fla., 145.

Chapter 3850, Acts of 1889, is to be construed *in pari materia* with Chapter 3879, Acts of 1889. Taking the two acts together, what was the intent of the Legislature as to the payment of a poll-tax as a prerequisite to voting ?

Chapter 3850 makes it the duty of the Collector of Revenue to furnish the Supervisor of Registration a list of all persons who had paid their poll-tax, and the Supervisor is to use this list in making up the registration list. The office of Supervisor of Registration was created by Chapter 3704, Section 8, Acts of 1887. This act was repealed in terms of Chapter 3879, Section 40, thus at least leaving the office vacant, if indeed it did not abolish the office. The same act provided that a Supervisor of Registration should be appointed in July, 1890. Construing together the two acts of 1889, it would seem that the Legislature did not intend

the poll-tax prerequisite should go into effect until after the appointment of a Supervisor of Registration in July, 1890; and from that time until an opportunity was afforded to every voter to pay two poll-taxes, the law was to apply (in a modified degree) only to the general election in 1890.

3. Admit, however, for argument's sake, that the payment of the poll-tax for 1889 was by law a prerequisite to voting at the Palatka election; Section 3 of Chapter 3850 provides that only the persons listed as having paid their poll-tax should be qualified voters. Inasmuch as no such list existed, were there on April 1, 1890, any qualified electors in Putnam county? If the effect of the act was to impair the right to vote, the act was not operative.

4. If the officers conducting an election adopt and enforce an erroneous rule as to the qualifications of voters, which prevents certain legal voters who offer to vote from giving in their votes, and being made known, prevents other voters similarly situated, from offering to vote, the election may be set aside, especially if it appears that such votes, if offered and received, would have changed the result or rendered it doubtful.

McCrary on Elections, Section 241.

Scranton Borough Election, Bright Elec. Cas., 455.

*R. W. Davis,* for Respondent.

First. The first ground of demurrer is that the information shows no right in relator to the office in question.

We argue under this head, that there is no sufficient allegation that the relator is entitled to his seat by virtue of any votes cast for him, or offered to be cast for him, or that were prevented from being cast for him. The only allegation is, that because of an alleged rule adopted by the inspectors, requiring evidence of the payment of a poll-tax,

nineteen electors "who would have voted for relator refrained from offering their votes."

The votes should at least have been offered, or it must be alleged that the voters were prevented from offering their votes.

> Am. & Eng. Encyclopædia of Law, Vol. 6, bottom of page 433.
>
> Frost vs. Metcalf, 5 Cong. El. Cases, page 291.

Ordinarily, at common law, I do not know that it would be necessary for relator to allege interest or title to the office, in himself, but under our Florida statute, there can be no doubt but that he must.

> McG. Dig., Sec. 2, p. 846.
>
> High on Ex. Rem., (2d Ed) p. 498, Sec. 630.
>
> 46 Mo., R., 528.

The allegation as to the nineteen votes is vague, uncertain and indefinite. It is simply said that nineteen voters refrained from offering their votes. It is not even alleged that they went to the polls ; what title therefore, does relator show in himself ? I do not discuss the payment of the poll-tax as a prerequisite to voting in the municipal election in question. It does not seem to be material, or to have played any part, only one vote having been challenged on this ground, and it not being alleged that this vote even was offered for relator.

Second. The second ground of demurrer involves somewhat the same questions as that we have attempted to dispose of in the first ground. This ground of demurrer is to the effect "that the information shows no state of facts which render the election of respondent invalid or that he holds the office illegally."

Under the allegations of this information, the City Council could have done nothing else than declare respondent entitled to his seat.

"The question on *quo warranto* to an elective office is, whether defendant received a majority of the votes, which the canvassers had a right to count?"

State vs. Tierney, 23 Wis., 430.

Third. The third ground of demurrer is that the "information shows affirmatively that a majority of the electors who voted, or offered to vote, cast their ballots for respondent, and the information fails to show that any elector offering to cast his ballot for relator was refused to vote by the inspectors."

This ground of demurrer speaks for itself.

Fourth. The information shows affirmatively, that upon a contest before the City Council, respondent was declared entitled to his seat. Our contention is that this is conclusive against relator. I know that the decisions of the courts are much in conflict on this point, but the better opinions seem to be that the action of the City Council as to its own members is conclusive. Under our statutes, the City Council are the judges of the election returns and qualifications of its own members.

McC. Dig. Sec. 15, p. 248.

Under our statute law as to *quo warranto* proceedings, this information is not one strictly in the interest of the people, especially as it is not filed by the Attorney-General. It is simply, as presented in this case, a means of testing title to the office, as between the contesting parties, and, when that is the case, the action of the Council is conclusive.

High on Ex. Rem., p. 512, Sec. 646.

Other authorities on this point are:

80 N. Y., 117; 2 Western Rep., 927; 41 N. W. Rep., 267; 32 Ark., 553; 44 Mo., 425; 43 Pa. (St.), 384; 37 N. Y., 518; 13 Mich., 481; 6 Kan., 430; 17 Ark., 407.

RANEY, C. J. This is an information under the *second* section of the *quo warranto* Act of 1872, which provides that any person claiming title to an office exercised by another shall have the right, upon the refusal of the Attorney-General, to institute proceedings in the name of the State upon such claimant's relation, or upon the Attorney-General's refusal to file an information setting forth such person's name as the person rightfully entitled to the office, to file an information or institute an action in the name of the State against the person exercising the office, setting up his own claim. The Court is authorized and required to determine the right of the claimant to the office if he so desires, but he is not to be adjudged entitled to it except upon full proof of his title. In all such cases the judgment is conclusive between the parties other than the State, but does not bar a subsequent *quo warranto* proceeding by the State.

The Attorney-General having refused to act in the premises, Spafford filed an information in the name of the State upon his own relation, alleging that the defendant has for twenty days past, in the city of Palatka, in this State, unlawfully usurped and exercised the office of alderman for the long term for Ward No. 4 in that city, and still does usurp the same. That on the first day of April, 1890, a city election was held, and that upon one of the tickets the candidates for aldermen were the defendant and one Marcus Loeb, and upon the other ticket the relator and F. C. Cockrane were the candidates. That upon the opening of the polls, the inspectors unlawfully adopted a rule not to allow any relator to vote unless he could exhibit his poll tax receipt for the year 1889, and after five ballots had been deposited in the box, one H. L. Miller, a duly qualified elector, offered his ballot, but his vote was challenged, and he was not allowed

to vote because he could not exhibit his poll tax receipt. That upon the fact being made known that the payment of the poll tax was held by the inspectors to be a prerequisite to voting, nineteen electors, all of whom would have voted for the relator, refrained from offering their ballots, because their votes would have been excluded by the enforcement of said rule. That when the ballots were counted, the result of the election was sixteen votes for respondent, and fifteen for Loeb, three for relator, and two for Cockrane; whereas, if the nineteen electors referred to above, and whose votes it is here alleged, were wrongfully excluded, had been allowed to cast their ballots, the result would have been twenty-two votes for Spafford, nineteen for Loeb, seventeen for Cockrane, and sixteen for defendant. That the Collector of Revenue had not furnished to the Supervisor of Registration of Putnam county any lists of the names of the persons who had paid their poll taxes, nor had such Supervisor made any note on the registration book furnished to the inspectors as to who had or had not paid a poll tax as required by "An act to provide for the payment of a capitation or poll tax as a prerequisite for voting, and prescribing the duties of Tax Collectors and Supervisors of Registration in relation thereto," approved May 25th, 1889, and that none of the electors who were allowed to vote were so noted as to the payment of the poll tax.

That upon the returns, as hereinbefore stated, the respondent was upon a contest adjudged by the City Council of Palatka to be entitled to be seated as alderman for Ward No. 4, and was inducted into the said office. That the relator is and was on the first day of April, 1890, a qualified elector in the mentioned ward; and concluding with prayer for process to make defendant answer to the people by what warrant he claims to hold and execute the office.

Each ward of the city, it may be remarked, is entitled to two aldermen.

To this information the defendant has demurred upon grounds testing its substantial merits.

The *quo warranto* statute of 1872, permits one claiming an office to institute the proceeding in the name of the State upon his own relation where the Attorney-General refuses to institute it upon such claimant's relation.   Where the Attorney-General has instituted a proceeding under the *first* section of the same act, to which proceeding that section contemplates he shall make " all the persons claiming the title to the office parties," and has failed to make one or more of them party or parties, the omitted claimant may, under the section, be made a party upon petition setting forth " under oath a *prima facie* case of right and title to the office ;" but where the Attorney-General has taken no action under this section, and has also refused to institute the proceeding contemplated by the second section, then it is that the claimant to the office is given the right to file an information in the name of the State, " setting up his own claim."

The purpose of this second section was not to vest any and every one with the official powers and duties of the Attorney-General upon a refusal of that officer to institute *quo warranto* proceedings against the incumbent of an office, but it was to secure any person honestly claiming an office, the right to go into the courts for the purpose of ascertaining that right, upon refusal of the Attorney-General to act in his behalf.  The language, "setting up his own claim," used in the second section, means the same as setting forth a *prima facie* case of right and title to office, to be found in the first section.  The first section entitles no

person to be made a party to a proceeding instituted by the Attorney-General, unless he makes such a *prima facie* showing, nor does the second section extend the right and form of action it provides to any one who does not make the same showing. Both sections were intended to provide a remedy in favor of persons claiming to be entitled to offices, and no others are within their spirit or terms, and no one not showing a *prima facie* case of right and title to an office, can successfully invoke their aid. Commonwealth vs. Cluly, 56 Penn. St., 270; State vs. Boal, 46 Mo., 528; Stone vs. Wetmore, 44 Ga., 495.

This being the purpose and meaning of the statute, the inquiry necessarily is whether or not the information shows that the relator is entitled to the office in question. If he is not, the proceeding cannot be maintained.

Assuming that the action of the inspectors in adopting the mentioned rule, or test of a legal voter, and in rejecting the ballot of Miller, was illegal, the fact still is that the relator is not entitled to the office because only three votes were cast in his favor, whereas sixteen were cast for Kennerly. The three votes cast for relator, considered either in connection with or separately from the offer of Miller to vote, and the assumed right of the questioned nineteen electors, do not entitle the relator to the office. Admitting the showing made to be true, or assuming that, upon issue joined, it had been proved, it is evident there could be no judgment for relator. He has made no *prima facie* showing of a right to the office, and this being so, he cannot call upon the defendant to answer the State as to his own title. The same conclusion as to the relator's right to the office follows, if we assume either that the action of the inspectors was legal, or if, on the other hand, it be that none of the alleged electors, including those whose ballots were

State ex rel.  J. H. Spafford v. S. J. Kennerly—Opinion of Court.

received and counted, Miller whose offer to vote was rejected, and those who refrained from voting, were legal voters.

The demurrer will be sustained, with leave, however, to relator to amend within fifteen days.