JOSSEY *et al. v.* SPEER, ordinary.

1. The legality and fairness of an election held under the local option liquor law can not be brought into question by a loose and general charge that "many votes, amounting to fifty or more, were cast illegally and against the sale of spirituous liquors, as will be shown by a recount of the votes and reference to tax books of said county, as will be shown by testimony."

2. Allegations in a petition filed for the purpose of contesting such an election, that "a number of qualified voters were registered on the registration books but were not put upon the list of voters furnished the election managers and by that means were deprived of the right to vote," and that "the registration books provided for said election were closed fifteen days before the election, [and] said fifteen days was an unreasonable time to close the books before the election, and deprived many lawful and qualified voters of the right to cast their ballots," are not, without more, sufficient to bring under review the correctness of the ordinary's declaration of the result of the election.

3. The validity of an election held at the proper time and place by qualified persons is not affected by their failure to take and subscribe the oath required by law, unless it appears that by reason of such failure the result of the election was different from what it would have been had the managers been duly sworn. The word "qualified," as used in section 112 of the Political Code, relates exclusively to the eligibility of the managers to serve, and not to qualification in the sense of taking an oath.

4. When the declared result of an election held under the above-mentioned law is that there was a majority of 83 votes one way or the other, a petition to contest the election which does not show good cause for throwing out as illegal more than 75 votes presents no ground for judicial action.

Argued May 10, 11, — Decided June 9, 1899.

Contest of election. Before Judge Littlejohn. Sumter county. September 6, 1898.

*James Taylor*, for plaintiffs. *W. P. Wallis, L. J. Blalock, S. Cobb* and *J. A. Ansley*, for defendant.

LUMPKIN, P. J. An election was held in the county of Sumter on August 17, 1898, under the local option liquor law, for

the purpose of determining whether or not spirituous liquors should be sold in that county.   On the next day, the ordinary declared the result to be "against the sale," by a majority of 83 votes.   On the 6th of September following, B. H. Jossey and a number of others presented to the judge of the superior court. a petition, alleging that the election in question was unfair and contrary to law, and praying "that such steps be taken and the court grant such orders as [it] may see fit and proper, as in such cases provided," and that, for reasons in the petition alleged, "enough votes . . be set aside . . to change the result of the election." The judge passed the following order: "After fully considering the above and foregoing petition and the law in connection therewith, the court is of the opinion that same does not warrant the issuing of the order provided for in section 1546 Code 1895, and the same is therefore denied." It appears affirmatively from the allegations of the petition, that no question or contest concerning the validity of the election was raised or made before the ordinary, and that the petitioners based their action in the premises upon the assumption that they could, under section 1546 of the Political Code, begin an original contest in the superior court. In the view we take of the case made by the petition, it is not now necessary to decide whether a contest of this kind can be instituted in the superior court in the first instance, or whether its jurisdiction in cases of this character is limited to reviewing contests previously had before and passed upon by the ordinary. If the law confers upon the superior court authority to take original and independent action in a case like the present, we agree with the trial judge that the petition now before us did not, in any event, warrant the issuing by him of an order appointing justices of the peace to recount the ballots and report the result to the next term of the superior court.

We will now briefly state and discuss the several grounds upon which the petition attacked the election.

1. In the first place, petitioners alleged that "many votes, amounting to fifty or more, were cast illegally and against the sale of spirituous liquors, as will be shown by a recount of the votes and reference to tax books of said county, as will be

shown by testimony." This complaint is entirely too loose and vague to demand action at the hands of the judge. It does not show in what respects the "fifty or more" votes were illegal, whether because the voters were not of lawful age, or had not paid their taxes, or had failed to register, or had not been for the requisite periods residents of the State and county. An allegation of this kind does not tender an issue which can be answered or met with evidence. It would certainly fall under a general demurrer, and we therefore feel confident that the judge was authorized in treating it as entirely too general. See *Collins* v. *Huff*, 63 *Ga.* 207, 209. Again, as will presently be seen, the petition alleges that divers votes cast in the election should be set aside for specified reasons, and it does not even aver that the fifty, or more, votes referred to in the paragraph now under consideration were not duplicates of other votes which petitioners claim should not be counted.

2. In another paragraph of the petition it was charged that the election was unfair and illegal, "because a number of qualified voters were registered on the registration books but were not put upon the list of voters furnished the election managers, and by that means were deprived of the right to vote." This paragraph is subject to the criticism that it fails to state what number of registered voters was left off the list furnished the managers, and does not give the name of a single person who was in this manner deprived of his right to vote. It would certainly never do to hold that so general an allegation as this imperatively demanded of the judge an order for a recount of the ballots. There is not enough in the language last quoted to show that the losing side in the election were actually deprived of a single vote, for it does not even aver that any one of those who were deprived of the right to vote would have voted "for the sale." The foregoing applies also to the following allegation of the petition: "The registration books provided for said election were closed fifteen days before the election, [and] said fifteen days was an unreasonable time to close the books before the election, and deprived many lawful and qualified voters of the right to cast their ballots, and for that reason petitioners say said election was illegal."

3. The election held at one of the precincts, wherein there was a majority of eleven votes "against the sale," was alleged to have been illegal, because it was held by three freeholders, two of whom were sworn by the other, the third not being sworn at all; and for the further reason that the two who were sworn did not subscribe to the oath as required by law. A similar attack was made upon the election held at another precinct, which gave a majority of seventeen votes "against the sale." As to this precinct it was alleged that "the election was held by three freeholders; that the oath was not administered to them, nor did they swear each other, as provided by law in such cases." These grounds of attack were based solely upon the proposition that the election-managers at the two precincts referred to were not duly sworn. Section 112 of the Political Code reads as follows: "No election shall be defeated for non-compliance with the requirements of law, if held at the proper time and place by persons qualified to hold them, if it is not shown that, by that non-compliance, the result is different from what it would have been had there been proper compliance." The simple question therefore is, conceding that the managers did not take and subscribe in due form of law the oath required of them, should the election at these two precincts for this reason alone be invalidated? The above-cited section gives a plain and unmistakable answer. The election was held at the proper time and at the proper place and by qualified persons; and there is nothing even remotely suggesting that the result would have been different had the managers been sworn in the most solemn and most formal manner. It must be noted that the word "qualified," as here used, is not synonymous with the word "sworn." This is settled by section 66 of the Political Code, which declares that: "The persons qualified to hold such elections are ordinaries, justices of the peace, and freeholders." In other words, the qualification referred to in section 112 relates to eligibility, and not to qualification in the sense of taking an oath of office.

4. The petition contained two paragraphs attacking the election in two districts of the county, in one of which there was a majority of 55, and in the other a majority of 20 votes

"against the sale." It is unnecessary to determine whether or not sufficient reasons are stated for setting aside the election as to these districts. Granting, for the sake of the argument, that the votes cast in them should not be counted, it would appear that there was in the entire county still a clear majority of eight votes "against the sale."

It follows that there was no legal necessity for a recount of the ballots; for, giving to the petitioners everything they could legally claim under the averments of their petition, so far as the same were properly pleaded, they have not made it appear that the election really resulted in favor of the sale, or that the ordinary did any wrong in declaring to the contrary.

*Judgment affirmed. All the Justices concurring.*