OGBURN *et al.* v. ELMORE, ordinary.

1. The general local option liquor law (Political Code, § 1546) confers upon the superior court as a court jurisdiction to hear and determine a contest of an election held under the provisions of that law. The question whether the General Assembly could constitutionally confer such authority upon the superior court is not made in the present case, though it is settled that such authority may be conferred upon individuals holding judicial office.

2. The proceeding for contest under the general local option liquor law is not an action at law, or a suit in equity. It is a special statutory proceeding, conferring power which must be exercised within the limits and by the method prescribed by the statute.

3. Such a proceeding can not be annexed to a suit at law or a case in equity; nor can a suit in equity be converted by amendment into a proceeding for contest under the statute.

4. The petition in the present case, properly construed, sets forth a suit in equity, and not a proceeding to contest an election held under the provisions of the general local option liquor law.

5. It has heretofore been determined that there was no equity in the original petition. While the amendment by which certain allegations in that petition were sought to be stricken ought to have been allowed, as there would have been no equity in the petition with these allegations stricken, a judgment refusing the amendment and dismissing the petition will not be reversed.

Argued July 11, — Decided August 3, 1905.

Equitable petition.    Before Judge Littlejohn.    Macon superior court.    November 22, 1904.

Ogburn and 293 others, in a petition addressed to the superior court of Macon county, made the following allegations:  On July 9, 1904, a petition was filed with the ordinary of that county, for the purpose of bringing on an election to determine whether such spirituous liquors as are mentioned in the Political Code, § 1548, should be sold within the limits of Macon county.   Elmore, the ordinary, upon the filing of the petition, passed an order submitting the question to the qualified voters of the county as required by law, and further ordered that notice of the election should be published in a named public gazette the requisite number of days.   Although the order was passed on July 9, the notice was not published until July 15 and appeared only in the issues of a gazette dated July 15, 22, and 29, and only 15 days elapsed from the first to the last insertion; the first notice being published only 24 days before the time fixed for the election.   On the day named in the order the polls were opened at the different precincts in the county, and a pretended election was held.   On August 9, the day following the pretended election, the managers at the different precincts returned to the ordinary all the papers required to be returned at a lawful election, and the ordinary made an attempt to consolidate the returns, and, after such consolidation, did declare that a majority of the votes had been cast against the sale, and on the same day did publish for the first time the result of the election as declared by him, and is proceeding to publish the same once a week for four weeks.   Unless the ordinary is enjoined from perfecting the result of said illegal election, the effect of the publication will be to make illegal the sale of liquors, at least until the order is reversed or set aside.   Petitioners are citizens and taxpayers and interested in the revenue arising from the sale of liquors, and six of them (named) are engaged in the sale of spirituous liquors and will be deprived, by the illegal order, of their property, being compelled to close their places of business.   Petitioners are without a remedy except in a court of equity and by the State's writ of injunction.   The result as declared by the ordinary is not the true result of the election.   A majority of the votes cast at the election was for the sale.   At one of the precincts there were 39 votes for the sale and 12 against the sale, and the

ordinary wilfully and fraudulently rejected this precinct from the consolidation. At another precinct there were 197 votes for the sale and 203 votes against the sale. Notwithstanding the election at this precinct was not held at the proper place, the ordinary in the consolidation counted these votes. A large number of registered votes, to wit 467, were deprived of their right to cast a legal ballot at this precinct, on account of the failure to establish and open a legal voting place in the district. At another precinct 51 votes were cast for the sale and 66 votes against the sale. These votes were counted in the consolidation, notwithstanding one of the managers at the precinct was neither a freeholder nor officer authorized by law to hold an election. This was also true of one of the managers at the second precinct above referred to. The petitioners constitute more than one tenth in number of those who voted at the election, and the petition is filed within twenty days from the day the ordinary declared the result. The prayer was that the judge direct three justices of the peace to recount the ballots at the three precincts above referred to, and report the result of the recount at the next term of the superior court to which the petition was made returnable; that the writ of injunction be directed to the ordinary, enjoining and restraining him from any further publication of the result of the election, and from in any manner attempting to enforce or carry into effect any order made by him in reference to declaring the result of the election; and that process issue, requiring the ordinary to be and appear at the next term of the superior court to be held for the county, to answer the complaint.

The petition was verified by the oath of one of the petitioners. Upon being presented to the judge, the same was sanctioned and ordered filed, and a rule nisi was issued requiring the ordinary to show cause on a named day why the injunction prayed for should not be granted. It was further ordered that three named justices of the peace recount the votes at the three precincts referred to in the petition. Attached to the petition as an exhibit was a copy of the notice of the ordinary of the result of the election as declared by him, from which it appeared that upon a consolidation there were cast 547 votes for the sale and 570 against the sale, and the result of the election was declared as being against the sale. Process was duly issued, and the ordinary

acknowledged service of the petition in the usual form of acknowledgments of service upon petitions in equity, following this acknowledgment with the statement that he also acknowledged service "of the filing of said petition for contest," and the order of the judge requiring a recount of the votes at the three precincts, waiving "all further notice of the filing [of] said petition for contest." At the time fixed for the hearing of the injunction the defendant appeared and filed a demurrer and an answer; and, after hearing evidence and considering the pleadings, the court refused to grant the injunction prayed for. This judgment was affirmed by the Supreme Court. *Ogburn* v. *Elmore*, 121 *Ga.* 72. When the case was called at the term of the court to which the petition was returnable, the plaintiffs offered to amend the petition by striking out the allegations that they were citizens and taxpayers and interested as such in the revenue arising from the sale of liquors, that some of them were directly interested in the sale, and all references to and the prayer for injunction. The court refused to allow this amendment, and the plaintiffs excepted. The plaintiffs then offered a further amendment, in which it was alleged that the judge on a given day had passed an order requiring three justices of the peace to recount the ballots in the election, and that such recount had been had and a return made to the next term of the superior court after the institution of the contest; and wherein it was sought to amend the prayer by asking for a recount of the ballots and a return of the result to the court. This amendment was also disallowed, and the plaintiffs excepted. The court then heard the demurrers and dismissed the petition, and the plaintiffs excepted.

*J. H. Hall, M. D. Jones*, and *L. E. Heath*, for plaintiffs.
*Hall & Wimberly* and *Greer & Felton*, for defendant.

COBB, J. The general local option liquor law provides that within twenty days from the day on which the ordinary declares the result of the election, one tenth of those who voted at the election may institute contest proceedings in the superior court in the manner provided in the act; that upon the institution of such a contest the judge shall direct three justices of the peace of the county to recount the ballots on a given day and report the result to the next term of the superior court, or to the term to which the petition is made returnable, at which term the con-

test must be heard, if such term is held, and if not, then at the next regular term of the court; that a continuance or postponement of the contest shall not be had for any other reason than the failure to hold the term to which the contest is returnable; and it is provided that if any of the parties die, it shall not be necessary to make the legal representatives of the deceased parties to the case. Provision is made for the summoning of witnesses and the hearing of evidence. The finding of the superior court on the contest is referred to as " the judgment of the superior court," and is declared to be final unless the case is carried to the Supreme Court for review. Political Code, § 1546. Express authority is thus conferred upon the *superior court* as a court to hear the contest. The authority is not conferred upon the *judge*, but upon the *court*; and the act expressly declares that the action of the superior court, denominated as the judgment, may be reviewed by the Supreme Court. What is the status of such a proceeding when instituted in the superior court?

The superior court is a constitutional court, and jurisdiction is vested therein by the constitution for the hearing and determining of civil and criminal cases. It has original jurisdiction in regard to certain classes of civil cases and appellate jurisdiction in regard to other classes. It has exclusive jurisdiction of certain classes of civil cases, as well as of certain criminal cases, and it has concurrent jurisdiction with other courts of civil and criminal cases of given classes. The superior court as created by the constitution is a court for the determination of civil and criminal cases. The manner in which these cases shall be heard and determined, so far as it is not prescribed in the constitution, is left to the determination of the General Assembly. The constitution confers upon the superior court and upon the judge authority to exercise, in certain instances, powers which would ordinarily be exercised by the executive or legislative department of the State, as where the judge is authorized to appoint a notary public who is ex-officio a justice of the peace, or where the superior court is authorized to grant charters to corporations of a given character. There is nothing in the constitution which confers upon the superior court as such the right to hear and determine contests of elections. The question whether there is in the constitution anything which would prohibit the superior court as a court from entertaining jurisdiction of such con-

tests is not made by the present record and need not be inquired into. Whatever doubts may have heretofore existed as to the power of the General Assembly to confer upon persons holding judicial offices the authority to hear contests of elections, it seems to be now settled that this power can be conferred upon these individuals, notwithstanding their relation to the judicial department of the government. See *Johnson* v. *Jackson,* 99 *Ga.* 389 ; *Skrine* v. *Jackson,* 73 *Ga.* 382. See also, in this connection, *Mayor* v. *Perry,* 114 *Ga.* 881. And when such authority is conferred upon a person holding a judicial position, and there is no provision of law for a review of his decision, it is final. *Carter* v. *Janes,* 96 *Ga.* 280. Whether in a case where a matter of this character is referred to the decision of the superior court the right of the Supreme Court to review its decision would arise under the constitution, in the absence of an express provision in the act, need not be decided, for the reason that the act under consideration in express terms provides for such review, and no question was raised as to the validity of this provision. There may be grave doubts as to the expediency of conferring upon persons holding judicial office, and upon the courts as such, the right to determine those questions which are of a political nature, and which could with more propriety be determined by the political department of the government. But if the General Assembly has the authority to confer this power upon such officers, or upon the courts, the question of expediency is addressed to their sound discretion and judgment. Treating the act as authorizing the superior court as such to hear the contest, and that provision authorizing a review by the Supreme Court as being a valid exercise of power by the General Assembly, the question which now confronts us is, does this legislation make the proceeding in the superior court partake of the nature of the ordinary case instituted in that court under its well-defined and undoubted constitutional jurisdiction ? Civil cases of which the superior courts have original jurisdiction are either cases at law or cases in equity, that is, cases in which the court is called upon to render a judgment according to the principles of the common law, or to enter a decree according to the established principles of the court of chancery. It is impossible to classify the proceeding to contest the election either as a case at law or as a case in equity. The proceeding is one in its nature

and effect unknown to the jurisdiction of either a common-law or equity court. It is a proceeding peculiar in its nature, of which the superior court would have no jurisdiction in the absence of a statute expressly conferring it. It stands alone and isolated, and in the determination of the questions therein raised the court is called upon to exercise neither its common-law nor its chancery powers, but to exercise simply the power conferred by the statute within the narrow limits therein prescribed. Such being the case, it must be instituted in the manner thus prescribed, and must not be joined or united with any other matter of controversy, even between the same parties, of which the superior court may have jurisdiction either as a court of law or as a court of equity. It can not be annexed to a law case, nor can it be made a part of an equity case. Equitable relief can not be sought in the proceeding; and legal relief can only be sought to the extent that the statute authorizes it, and no further.

It now becomes necessary for us to determine what was the character of the proceeding which was instituted by the plaintiffs in the present case. Was it an appeal to the superior court as a court of equity, for the exercise by that court of some of its equity powers? Or was it a contest instituted under the provisions of the general local option liquor law (Civil Code, § 1546)? The petition has in it some allegations which would be appropriate to a petition for a contest; but in the prayer for a recount the plaintiffs do not ask for that which the law says shall be required in a contest, that is, for a recount of the entire vote cast in the election, the prayer being simply for a recount of the vote cast at three precincts. It is addressed to the superior court. This would be appropriate in a petition for contest as well as in a petition for equitable relief. The allegations in reference to the conduct of the ordinary, so far as the notice of the election and the consolidation of the returns are concerned, would be appropriate in either proceeding. The statement as to the ratio which the number of the plaintiffs bore to the number of voters at the election would indicate that it was the intention of the plaintiffs to contest the election. That the petitioners are citizens and taxpayers and that some of them are interested as sellers of liquor, and therefore interested as such in the action of the ordinary, are averments wholly foreign to a contest but are appropriate to a petition for equitable relief. This is also true in ref-

erence to those allegations as to the injunction and the prayer for the granting of the same. The petition prays for process, which is a prayer wholly unnecessary and improper in a petition for a contest. The ordinary in his acknowledgment of service seems to have treated the petition as of a dual nature, but the construction placed by him upon the petition is of course immaterial. The petition was presented to the judge as a petition for equitable relief, and was sanctioned as such. A hearing was had that would be had upon such a petition, and the case was brought to this court and heard upon a fast writ of error in the same manner that an ordinary injunction case would be disposed of. Considering the petition as a whole, as well as the manner in which the same has been dealt with by counsel and by the judge of the superior court, no other conclusion can properly be reached than that it was intended, when filed, as a petition for equitable relief. So construing it, those allegations which would be appropriate only to a petition for a contest were merely surplusage, and, even if not stricken, could be ignored. The judge therefore properly refused to allow the amendment which sought to convert the petition into a proceeding for contest by making allegations in reference to a recount of the ballots which were not made in the original petition. But we think the judge erred in refusing to allow the amendment striking out those portions of the petition relating to the prayer for injunction. In all cases, both at law and in equity, the plaintiff has a right, which is not subject to any limitation, to strike out any averment that he sees proper, and the court must allow the amendment. If this amendment had been allowed, however, the petition would have been left with nothing in it with which the superior court as a court of equity could deal, and therefore could have been stricken from the files either on motion of counsel or by the court on its own motion. The amendment should have been allowed, and then the case dismissed for want of equity in the petition. There was no equity in the petition as originally filed. *Ogburn* v. *Elmore,* supra. There would certainly have been no equity in the petition if the amendment had been allowed; and the erroneous disallowance of the amendment will not work a reversal of the judgment.

*Judgment affirmed. All the Justices concur, except Simmons, C. J., absent.*