HARRIS *et al. v.* SHEFFIELD, judge.

1. The writ of mandamus will not issue to compel a judge of the superior court to sign a bill of exceptions complaining of a ruling made in a case which was not within the jurisdiction of the superior court, when such want of jurisdiction appears from the application for the writ.
2. Performance of a political function by a court is not inherently judicial, and whatever jurisdiction over matters of a political nature with which courts may be constitutionally invested is derived from a statute.
3. The Political Code, § 1546, conferring on the superior court jurisdiction in cases of contest of a local-option election, limits that jurisdiction to matters involved in the ascertainment of the true result of the election.
4. The unconstitutionality of the act under which the election is held, and the validity of the election as dependent on compliance with the prerequisites for calling the election, are not comprehended within the scope of the contest provided for in this code section.
5. The costs accruing in this court in an application for mandamus against a judicial officer are taxable against the applicant.

Argued April 8,—Decided May 15, 1907.

Application for mandamus.

*Byron Collins* and *Pope & Bennet,* for plaintiffs.

*Peeples & Jordan,* for defendant.

EVANS, J. Under the act approved August 1, 1906 (Acts 1906, p. 114), to provide for local-option elections in counties in which the sale of whisky is not lawful except through dispensaries, an election was held in the county of Early on September 4, 1906. The result of the election was declared by the ordinary to be "against the dispensary." Pending the publication of the result, and within twenty days from the declaration of the result by the ordinary, certain citizens, representing themselves to be one tenth in number of the voters who had voted at the election, filed a petition to contest the election and have the same declared invalid, for nineteen reasons specifically set forth in the petition for contest. These reasons may be resolved into two general classifica-

tions: one impeaching the validity of the election because of non-compliance with the prerequisites for calling the election, the other because of the unconstitutionality of the act under which the election was held. This contest was presented to the judge of the superior court, who passed an order that a hearing be had thereon, but declined to appoint three justices of the peace to recount the ballots; and the contestants presented their bill of exceptions to the judge, assigning error upon such refusal; which bill of exceptions the judge refused to sign. In his order declining to sign and certify the bill of exceptions the judge says: "I recognize the truth of the statements therein contained, but refuse to certify the same officially, for the following reasons only, to wit: because petitioners filed no exceptions pendente lite or otherwise in writing until now, and, instead of doing so, refiled their petition with the clerk of the court, and had the same served, and appeared and presented the same at the regular term of court to which the same was returnable; and I hold that said petitioners thereby waived the right to present this bill of exceptions, although petitioners' counsel, at the time of my refusal to grant the order requiring three justices of the peace to recount the ballots, and continuously since then, have expressed verbally their exceptions and intention to file a bill of exceptions." On the first day of the present term the contestants applied for the writ of mandamus to compel his honor, Judge Sheffield, to sign the bill of exceptions which had been tendered to him, and which was attached to the application. Judge Sheffield, in answer to the rule nisi, admitted the foregoing facts.

In the case of *Hendricks* v. *Reid,* 125 *Ga.* 775, this court refused to make a mandamus absolute, because the bill of exceptions tendered did not assign error upon any final judgment, and for that reason would have been dismissed by this court if the bill of exceptions had been signed. The principle upon which this case rests is that while a writ of mandamus can not be employed as a substitute for a writ of error, yet when it appears that the rulings complained of can not be reviewed by writ of error, this court will not commit the folly of requiring a judge to certify a bill of exceptions which must necessarily be dismissed. This ruling comprehends any case where the application for mandamus discloses that the proceeding before the judge was without the juris-

diction of the court. If the decision complained of is not within the jurisdiction of the court, it is coram non judice, and this court will not undertake to determine whether the court's decision was right or wrong, if he was without jurisdiction in the premises. Therefore our inquiry will be directed to a construction of the act of August 1, 1906, with reference to the jurisdiction of the superior court in the matter of a contested election.

This act is modeled after the local-option act contained in the Political Code, §1541 et seq. Indeed, many of the sections of the code, relating to the local-option election for or against the sale of intoxicating liquors, are by reference incorporated in the act of 1906. Among the sections so incorporated are 1543, 1545, and 1546, which relate to the manner of holding the election, the declaration of the result, and the proceeding for contesting the result of the election. The subject-matter of our present inquiry involves a construction of section 1546, in this: Does this section confine the jurisdiction of the superior court to matters affecting the result? Or are its provisions sufficiently comprehensive to confer jurisdiction on the superior court to decide as to the validity of the election when contested because of non-compliance with the statutory prerequisites to calling the election, or because of the unconstitutionality of the act? Section 1546 provides that one tenth of the number of voters having voted at such election may, by petition to the superior court, contest the election on any ground which "impeaches the fairness of the election, or the conduct of the ordinary." When this petition is presented to the judge he shall direct an order to three justices of the peace of the county, requiring them to recount the ballots on a given day, and report the result to the term of the court to which the petition may be returnable. The section provides that "either party may subpœna witnesses to prove either fraud in the ballots, the counting thereof, or in the conduct of the ordinary, or of the managers of the election, and introduce evidence to establish either proposition or the converse thereof. . . If the election shall appear to have been fraudulently conducted, or the votes fraudulently counted, the judge shall have power to declare the result and overrule the action of the ordinary in the premises."

In *Ogburn* v. *Elmore*, 121 *Ga.* 72, the query was propounded whether persons who have voted at an election can attack it on

the ground that notice had not been published as required by law. So far as we have been able to discover, there is no adjudicated case where the question propounded in this query has been discussed. It is fundamental that in a case of a contest between two persons to determine which has been legally elected, no question of the validity of the election can be raised. If there is no legal election there can be no contest, the proceedings in such a case being coram non judice. In re Stevens, 1 Lack. Leg. Rec. (Pa.) 475. There is a plain distinction between the contest of an election specially held to determine the adoption of a regulation forbidding the sale of spirituous liquors within a given county, and a contest of an election for a State or county office. The common-law remedy of quo warranto is available to individuals to try the title to an office, but is altogether unsuited to determine the adoption of a regulation according to the results of a special election. The local-option elections for the regulation of the sale of intoxicating liquors in this State are an instance of the initiative and referendum. The General Assembly has declared that the sale of such liquors may be forbidden in a given county, provided a majority of the qualified voters at an election held for that purpose shall so determine. The call for an election is initiated by a petition of a certain number of qualified voters. When this petition is filed with the ordinary, he is directed to call an election, and the duty of declaring the result of the election devolves upon him by statute. If no provision had been made for contesting such an election, the declaration of the result by the ordinary would have been final and conclusive. *Woodard* v. *State,* 103 *Ga.* 499. It was optional with the General Assembly to legislate on the subject of the sale of intoxicating liquors within given territory by special law, or by a general law providing that its terms should become effective in a particular locality upon prescribed conditions; such, for instance, as where in an election a majority of the qualified voters desire such legislation. When the tribunal named by the legislature, to ascertain and declare whether the prescribed condition has been met, has acted and made declaration in terms of the statute, the law immediately goes into effect. It is not necessary to determine whether or not such tribunal, before declaring the result of an election illegally called, may be restrained by appropriate remedy from so doing, as this proposition

is not before us. But we contend that after the result has been declared by the tribunal charged by law with this duty, the act of such tribunal is conclusive. The common-law remedy of quo warranto could not be used to inquire into and decide the validity of an election of this kind. If the legislature fails to provide for a contest of the election, a declaration of the result, by the officer charged by law with the duty of canvassing the returns and declaring the result, is final and conclusive that the people of that locality had adopted the provisions of the law through the medium of an election. *Skrine* v. *Jackson,* 73 *Ga.* 377.

Elections belong to the political branch of the government and are beyond the control of judicial power. It was not designed, when the fundamental law of the State was formed, that either department of government should interfere with the control of the other; and it is for the political power of the State, within the limits of the constitution, to provide the manner in which elections shall be held. And until the courts are empowered to act, by the constitution or legislative enactment, they must refrain from interference. Dickey *v.* Reed, 78 Ill. 271. Where the power to decide a contest is lodged with a judicial officer, it has been held that the function is political, and not judicial, and that no writ of error will lie from his decision. *Carter* v. *Janes,* 96 *Ga.* 280; *Tupper* v. *Dart,* 104 *Ga.* 179. The courts have power to decide questions of contest, not because the subject-matter is inherently judicial, but because the jurisdiction is conferred by the legislature. We are not deciding whether or not the General Assembly could constitutionally confer such authority upon the superior court, because that point is not in the case; but what we do rule is that the superior court derives its jurisdiction to hear and determine a contested local-option election from the provisions of the statute. *Ogburn* v. *Elmore,* 123 *Ga.* 677. As was held in that case, the proceeding for a contest under the general local-option law is not an action at law or a suit in equity. It is a special statutory proceeding, conferring power which must be exercised within the limits and by the method prescribed by the statute. We thus reach the conclusion that unless we can find something within the local-option act which confers upon the court jurisdiction to pass upon the validity of an election because of non-compliance with the terms of the act for calling the election,

or the unconstitutionality of the law, the superior court was without jurisdiction to pass any order, where these questions were the only ones submitted in the petition for contest. Turning now to section 1546, let us see the scope of the issues therein defined. Witnesses are allowed to be subpœnaed to prove "either fraud in the ballots, the counting thereof, or in the conduct of the ordinary, or of the managers of the election." All these matters relate to the result of the election,—to ascertaining which of the two questions submitted received the largest number of legal votes cast in the election. The power of the judge is expressly limited to declaring the result in cases where the election shall appear to have been fraudulently conducted, or the votes fraudulently counted. What result? The result of the ballots. For the judge is given no power to pass upon the validity of the election because it was not called in the manner pointed out by the statute, or because the act providing for the election is unconstitutional.

The initiative and referendum has been a favorite method in many of the States in settling the question of prohibition, or the regulation of the liquor traffic. We have examined the statutes of several States relating to this subject and have selected Texas as typical. It appears, from the Revised Statutes of 1895, article 3397, that in making provision for a contest of such an election, it was enacted that "should it appear from the evidence that the election was illegally or fraudulently conducted, or that by the action or want of action on the part of the officers to whom was intrusted the control of such election, such a number of legal voters were denied the privilege of voting as, had they been allowed to vote, might have materially changed the result; or if it appears from the evidence that such irregularities existed as to render the true result of the election impossible to be arrived at, or very doubtful of ascertaining, the court shall adjudge such election to be void, and shall order the proper officer to order another election to be held." Under statutes of this kind, jurisdiction is expressly given to the courts to declare the election invalid and order a new election; but our statute does not go to this extent. It seems to have been the legislative intent to provide only for ascertaining which side of the question received a majority of the legal votes cast. It would require legislation to extend the provisions of section 1546 further, so as to bring within the ju-

risdiction of the court the right to decide the constitutionality of the act, and that all acts prerequisite to the calling of the election had been done in the manner prescribed in the act. Though the constitutionality of the act can not be determined in the statutory contest, yet if the act be unconstitutional, it may be assailed just like any other legislative enactment.

Our attention has been called to the case of *McMillan* v. *Bell*, 105 *Ga.* 496, to sustain the position that the order to the justices of the peace to recount the ballots is indispensable to the further progress of the contest, and that if the judge refuses to grant it the case is at an end, and no further proceeding therein can be lawfully had. We have carefully examined the record in that case, and find that the contest before the ordinary was based upon the charge that a certain number of individuals who had voted in favor of the successful side of the issue were not qualified electors, and if these votes were eliminated, the result of the election would be changed, giving to the apparently unsuccessful side a majority of the votes cast. Applying the decision to the assignments of error in that case, it was only held that in a contest proceeding of that kind the order for a recount was jurisdictional. There is a marked difference between that case and the one under discussion. The allegations for contest in *McMillan's* case brought that proceeding squarely within the terms of section 1546. Indeed, this section of the code seems to have been designed for a case of that kind. But in the present case the contestants were not seeking to change the result, but their whole proceeding is aimed at the annihilation of the result of the election because of its invalidity.

From these considerations we arrive at the conclusion that the various matters alleged in the petition for contest related to matters without the jurisdiction of the superior court. The proceeding was not within the purview of section 1546, and the judge of the superior court was without jurisdiction to pass the order appointing the justices to recount the ballots; and we will not by mandamus compel the judge to certify a bill of exceptions complaining of a decision palpably beyond the jurisdiction of the court over which he presided, as is apparent from the petition for mandamus.

　　　　*Writ of mandamus denied. All the Justices concur.*