## NORWOOD, ordinary, *v.* PEEPLES.

HINES, J. 1. The contest of a mayor's election must "be filed with, heard, and determined by the ordinary of the county wherein such contest may arise, under the same rules and regulations as to the mode of procedure as prescribed in contests where commission is issued by the Governor." Civil Code (1910), § 125.

2. Under said rules and regulations, "such contest shall be begun by giving the adverse party five days' notice in writing, stating the grounds of contest, the time and place where the contestant intends to take testimony, and the judicial officer before whom the testimony will be taken." Civil Code (1910), § 121(2).

3. Procedure by petition addressed to the ordinary, with prayer that notice of the contest be served instanter upon the adverse party, that the latter show cause at the office of the ordinary on a named day, if any he could, why the prayers of the petition should not be granted, and why the votes cast by certain named parties should not be excluded from the ballot-box, a recount be had, and the lawful result of the election declared, was not in accordance with the above rules and regulations, and was not such a contest of the election as is provided and required by these rules and regulations.

4. If such petition could be treated as a substantial compliance with such rules and regulations, allegations therein, that the election was illegal and void for the reason that 35 named women voting in said election for mayor were not legal and qualified voters, because they had not paid their poll-taxes for the year 1922, for which reason said votes should be excluded from the ballot-box, and the legal votes remaining therein be recounted so as to actually declare the result, and wherein the contestant alleges upon information and belief that when said illegal votes have been removed from the ballot-box, and the true and correct result of the election declared, he will be the person duly elected and entitled to hold the office of mayor for the ensuing year, are too loose and general

to bring into question the legality and fairness of the election. *Collins v. Huff*, 63 *Ga.* 207; *Jossey v. Speer*, 107 *Ga.* 828 (33 S. E. 718); *Paulk v. Lee*, 117 *Ga.* 6 (43 S. E. 368).

5. Where in response to the order of the ordinary, issued upon the presentation of said petition, the contestee appeared and made a motion to strike said petition on the ground that it set forth no valid and legal grounds for contesting the election, the ordinary did not exceed his jurisdiction in entertaining said motion, in sustaining the same, and in dismissing the petition. *Paulk v. Lee*, supra. Nothing to the contrary of this ruling is to be found in *Simpson v. Rimes*, 141 *Ga.* 822 (82 S. E. 291), in which this court held that in such a contest the ordinary had no authority to consider the right of a person to vote who did not vote, and, upon concluding that he was illegally deprived of voting, to render a judgment deciding that the contestant was duly elected, based on a count of such assumed vote; nor in *Walton v. Booth*, 151 *Ga.* 452 (107 S. E. 63), in which this court held that in such a contest the ordinary had no jurisdiction to entertain a question as to whether the election itself, out of which the contest grew, was void. In those cases the ordinary exceeded his jurisdiction; but in the instant case he had the power and authority to determine whether, under the facts embraced in this petition, the contestant made a case which authorized a contest of the election.

6. Where the ordinary rendered judgment sustaining the motion of the contestee to dismiss the petition, on the ground that it set out no ground of contest, and where such judgment was correct, the judge of the superior court, on application by contestant for mandamus, erred in granting a mandamus absolute, requiring the ordinary to hear the contest.

*Judgment reversed. All the Justices concur, except Gilbert, J., dissenting.*

No. 4223. APRIL 21, 1924.

Mandamus. Before Judge Dickerson. Berrien superior court. February 1, 1924.

On December 14, 1923, T. M. Peeples filed his petition addressed to Joel I. Norwood, ordinary of Berrien County, in which he alleged the following facts: On December 11, 1923, an election was held in the City of Nashville, said county, for the purpose of electing a mayor, three councilmen, and other officers. Petitioner and J. V. Talley were the respective candidates for the office of mayor of said city for year 1924. At said election 152 votes were cast, petitioner receiving 70 and Talley receiving 82, which would entitle Talley to serve as mayor for said year. Said election, in so far as the contest for the office of mayor of said city is concerned, is illegal and void, for the reason that 35 named women voting in said election for mayor were not legal and qualified voters, because they had not paid their poll-taxes for the year

1922, as required by the laws of the State and said city; for which reason said votes should be expunged from the ballot-box and the true and legal votes remaining therein recounted, so as to actually declare the result, so that the person entitled to hold the office of mayor should be legally declared as such officer. Contestant alleges upon information and belief that when said illegal votes have been removed from the ballot-box, and the true and correct result of the election declared, he will be the person duly elected and entitled to hold said office for the year 1924. He prays that the clerk of the council of said city, if he has not done so, deliver instanter to said ordinary one tally-sheet, one list of voters, and all the ballots cast in said election, that a recount of the votes be made, that all the illegal votes cast in said election be excluded from the ballot-box, that only the legal votes be counted, and that the lawful result of said election be declared, so that the person receiving the highest number of votes in said election be declared mayor of said city for 1924. He further prays that notice of this contest be served instanter upon Talley, and that the latter show cause at the office of said ordinary on December 21, 1923, if any he can, why the prayers of the petition should not be granted, and why the votes cast by the above parties should not be excluded from the ballot-box, a recount had, and the lawful result of said election declared. Thereupon the ordinary passed an order, reciting the filing of the above petition, and requiring said Talley to show cause before him, "at ten o'clock a. m., at the office of the ordinary in the court-house in Berrien County, Georgia, why the contest should not be held and why a recount of the votes should not be made as prescribed and provided by law, and, after the recount has been made, why the result of the election shall not be declared and the persons receiving the number of votes after the illegal votes have been excluded from the ballot-box should not be declared as the person elected for mayor to serve for the ensuing year of 1924 for the City of Nashville, Georgia." The order further provided: "beginning at the time and place herein named for this contest, that the contestant will then and there take testimony and offer testimony in support of the allegations of the petition and this notice, for the purpose of showing that the names of each and all of the persons set out in the petition and notice were illegal voters, and because of this to

have their votes . . excluded from the ballot-box, . . and thereafter to declare the result of said election."

The contestee, Talley, in answer to the rule nisi issued upon said petition, appearing, solely for that purpose, filed a motion to strike the contestant's petition, upon the ground that it set forth no valid and legal ground for contesting said election, and prayed that it be dismissed. After hearing argument the ordinary "adjudged that all legal requirements do not affirmatively appear in said petition," and dismissed the same. Thereupon Peeples filed his petition for mandamus against Norwood as ordinary, and alleged the following facts: (1) On December 11, 1923, the regular election for mayor for the City of Nashville was held; and petitioner and J. V. Talley were candidates for said office. (2) On the face of the returns of the election petitioner received 70 votes and Talley 82 votes, giving Talley, on the face of the returns, a majority of 12 votes. Of the 82 votes counted by the election manager for Talley, 35 were votes of women who were not registered and who had not paid their poll-tax for 1922, for which reason they were not entitled to vote. Two votes cast for petitioner were by women, and illegal; and when all of said illegal votes are excluded, petitioner will have a majority of 22 votes, and for this reason is duly entitled to said office. (3) Within the time prescribed by law petitioner filed with the ordinary his contest of election; and after due service on Talley, the contest came on to be heard at the time and place set as prescribed by law, and the ordinary refused to hear said contest as he is required to do by law, and passed an order dismissing the contest proceedings solely upon the ground that the mayor and council of the City of Nashville had not been served with notice of petitioner's intention to contest said election. (4) Said order is illegal and void, for the reason that the ordinary had no power or authority to pass it, the only power vested in him being to hear the petition and contest upon its merits, canvass and count the votes cast in the election, excluding all illegal votes, and declare the result of the election. (5) The mayor and council had notice of the filing and pendency of the election contest; and although this fact was made known to the ordinary when the motion to dismiss was argued before him, he disregarded this fact and refused to hear the contest upon its merits. (6) Before the ordinary passed his order dismissing

the contest proceedings, petitioner asked leave to amend by setting up a written waiver from the mayor of the City of Nashville, all of which the ordinary refused, and denied to petitioner each and every right to contest said election. Petitioner prayed for a rule nisi directing Norwood, ordinary, to show cause, if any he could, why mandamus absolute should not issue requiring him to hold said election contest as provided by law; and for such further relief as petitioner might be entitled to.

In response to the mandamus nisi Norwood, appearing solely for that purpose, made his written motion to dismiss plaintiff's petition for mandamus, because: (1) No cause for mandamus appears from the allegations therein. (2) It affirmatively appears from the petition that the defendant had already assumed jurisdiction of the subject-matter, had heard and acted upon the same, and determined same adversely to plaintiff; and such matter is fully and completely res adjudicata. The defendant, answering the petition for mandamus, admitted paragraph 1 thereof, and denied paragraphs 2, 3, 4, 5, and 6. He alleged that he had already assumed jurisdiction of the subject-matter involved, had already heard and determined the same, and the decision rendered had already been made a part of the record of the contest proceedings of file. The general demurrer filed by defendant to the petition for mandamus was heard by the judge, who took the same under advisement, and, on February 1, 1924, passed an order making the mandamus absolute as prayed, and ordering the ordinary to hear said election contest and determine same as provided by law. The judge made no ruling on said general demurrer. To this judgment defendant excepted on the grounds that it was contrary to law and without evidence to support it; that the court should have sustained the demurrer and dismissed the petition for mandamus, and should have refrained from passing an order upon the merits of the case after an answer had been filed by defendant making an issue of fact, there having been no agreement between the parties that the judge could determine the issues of fact involved in vacation.

*W. R. Smith* and *John P. & Dewey Knight,* for plaintiff in error.

*R. A. Hendricks, Jeff S. Story,* and *Elsie Higgs Griner,* contra.

GILBERT, J., dissenting. 1. The majority of the court, in the third headnote, hold that the petition addressed to the ordinary "was not such a contest of the election as is provided and required" under the law. Only one defect in the petition addressed to the ordinary is pointed out, to wit: in the second headnote it is pointed out that the Civil Code (1910), § 121 (2); requires five days' notice in writing to the contestee of the time and place where the contestant intends to take testimony and the judicial officer before whom the testimony will be taken. The contestee makes no complaint of a failure on the part of the contestant to give due notice. If there had been such failure, it would seem that the contestee, desiring to avail himself of that defense, would have pleaded it. On the contrary he appeared before the ordinary and interposed a general demurrer and filed an answer, without making any mention of a failure to receive due and legal notice. The petition for mandamus alleges, in regard to the petition for contest filed with the ordinary, that "after due service on the said J. V. Talley the contest came on to be heard at the place and time set as prescribed by law," and that the said ordinary refused to hear said contest, "solely upon the ground that the mayor and council of the City of Nashville had not been served with notice of petitioner's intention to contest said election." The statute does not require notice on the mayor and council. The order of the ordinary shows that he dismissed the petition for grounds other than lack of service. If in fact a copy of the petition was served on the contestee, of course this copy gave him full notice of the time and place of the hearing, as provided in the Civil Code (1910), § 121 (2). Moreover, counsel for the contestee does not mention, in his brief before this court, lack of due and legal notice. It would seem, therefore, that the ruling now made in regard to lack of proper notice is without sufficient basis to authorize it. On the contrary it would seem reasonable that there must have been full compliance with such requirement, and therefore no issue on the question. The cases cited in the majority ruling have reference to § 1546 of volume 1 of the Code of 1895 —local-option statutes. The notice there required is notice to the ordinary of a contest proceeding in the superior court. In such a case it was held that where the petition to the superior court was served on the ordinary, this was sufficient compliance with the

statutory requirement as to notice. *Drake* v. *Drewry,* 112 *Ga.* 308, 310 (37 S. E. 432).

2.   The majority rule that the petition addressed to the ordinary was not sufficient to constitute a contest under the Civil Code (1910), § 125; and as authority the following cases are cited: *Collins* v. *Huff,* 63 *Ga.* 207; *Jossey* v. *Speer,* 107 *Ga.* 828; *Paulk* v. *Lee,* 117 *Ga.* 6.   Those cases are all different from the case now before us.   In dealing with those cases this court passed upon the sufficiency of petitions addressed to the superior court, a court of general jurisdiction, and not with petitions addressed to the ordinary, a court of limited jurisdiction.   Moreover, the contests involved were not based upon the Civil Code (1910), § 125, and the provisions of law were different.   As an illustration of the difference, in the case of *Paulk* v. *Lee,* which involved a contest on the local-option law, the petition to the superior court alleged in general terms that a large number of illegal votes were cast, without giving the name of a single person.   This allegation was clearly too general; and it was so ruled.   In the case now before us the petition to. the ordinary gives the name of each and every person alleged to have voted illegally, and the petition also alleges that when all illegal votes have been excluded petitioner will be legally and duly elected and entitled to the office.

3.   Plaintiff in error complains that the judge of the superior court erred in rendering a judgment for mandamus absolute, thus passing upon the merits of the case, because there was an answer filed "making an issue of fact."   The whole case, however, turns upon the order of the ordinary dismissing the petition for a contest on the ground that "it is, after consideration, adjudged that all legal requirements do not affirmatively appear in said petition as amended, and said petition as amended is hereby dismissed.   It is so ordered."   This action of the court was the exact equivalent of sustaining a general demurrer to the petition.   If this judgment of the ordinary was authorized by law, then it necessarily follows that the judge of the superior court erred in rendering his judgment.   On the other hand, if the judgment of the ordinary sustaining the general demurrer to the petition for a contest was unauthorized by law, then the judge of the superior court could do nothing except render a judgment absolute, requiring the ordinary to proceed to a hearing of the contest on its merits.

4. The main question, after all, is whether the ordinary was authorized by law to dismiss the petition for the contest, or whether he should have proceeded to hear the contest on the merits. I differ from my learned colleagues on this question, with great reluctance and respect; but the principle involved is so important that a dissent seems justifiable. The power of the ordinary as provided in the Civil Code (1910), § 125, is not that of a court of general jurisdiction. The authority of the ordinary is limited, and no authority has been cited giving the ordinary the power to dismiss the petition instead of hearing it on its merits. "Whenever any contest arises over an election of any constable, municipal officers, or other officers not hereinbefore provided for, the same shall be filed with, heard, and determined by the ordinary of the county wherein such contest may arise, under the same rules and regulations as to the mode of procedure as prescribed in contests where commission is issued by the Governor." In cases of the latter character section 123 applies, and is as follows: "Illegal votes, by the method aforesaid and otherwise, may be proven by both parties; and if such are proven on both sides, one shall stand against another, and he is elected who has the greatest number of legal votes. All are considered legal not proven to be illegal." In *Harris* v. *Sheffield*, 128 *Ga.* 299 (57 S. E. 305), the second headnote is as follows: "Performance of a political function by a court is not inherently judicial, and whatever jurisdiction over matters of a political nature with which courts may be constitutionally vested is derived from a statute." And the third headnote is as follows: "The Political Code [1895], § 1546, conferring on the superior court jurisdiction in cases of contest of a local-option election, limits that jurisdiction to matters involved in the ascertainment of the true result of the election." "Where a contest is filed before the ordinary of the county under the provisions of § 125 of the Civil Code, relating to contested elections, the ordinary has no other jurisdiction than, after examining and counting the ballots as provided in preceding sections of the code relating to contested elections and taking evidence, to declare whether the contestant or the contestee is elected to the office in question, and has no jurisdiction to entertain the question as to whether the election itself, out of which the contest grew, was void; and if he exceeds the jurisdiction and declares the election

illegal, his judgment is void." *Walton* v. *Booth,* 151 *Ga.* 452. In the opinion, referring to code section 125, it was said: "The ordinary had no jurisdiction, under the provisions of the statute quoted, other than to determine, upon a contest raised by a party who was himself a candidate at the election, whether the person filing the contest or the one who was declared elected received the greater number of legal votes, and, in case the contestant received it, to declare him duly elected. A contest under this section raises merely the issue between the contestant and the contestee as to which of the two has the right to the office. This section is in the chapter relating to contested elections; and the duty of the ordinary in such a contested election is illustrated by the provisions of § 121 of the Civil Code, relating to proceedings in contested elections, and the subsections following, relating to the examination of witnesses and the taking of testimony. And when the ordinary, instead of taking the testimony as contemplated by the sections and subsections referred to, declared the election void upon hearing evidence, he exceeded his jurisdiction, and the judgment rendered was void. The ordinary, so far as relates to elections of the officers named in section 125 of the Civil Code, performs certain statutory duties; and it is doubtful whether his judgment in the contest could be reviewed by certiorari or otherwise. It was the purpose of the legislature, in enacting the statute embraced in section 125, to confer merely a limited jurisdiction upon the ordinary,—a jurisdiction to decide between two persons who claim an office and who raise a question as to their respective rights in the way pointed out. *Simpson* v. *Rimes,* 141 *Ga.* 822." "Where the power to decide a contest is lodged with a judicial officer, it has been held that the function is political, and not judicial, and that no writ of error will lie from his decision. *Carter* v. *Janes,* 96 *Ga.* 280 [23 S. E. 201] ; *Tupper* v. *Dart,* 104 *Ga.* 179 [30 S. E. 624]." *Harris* v. *Sheffield,* supra. This is a sufficient reason why the legislature intended that the ordinary should hear the contest on its merits and should not have the power to dismiss the proceedings. My conclusion is that the jurisdiction of the ordinary was restricted solely to the authority delegated by the General Assembly, as prescribed in the code sections dealt with above, and that his only authority was to hear the contest on its merits, to ascertain what votes were legally cast,

who received a majority of the legal votes, and to declare such person the duly elected mayor of Nashville. Mandamus will issue to require the ordinary to act in accordance with the statute, but will not otherwise control or interfere with his legal discretion. *Richmond County* v. *Steed,* 150 *Ga.* 229, 232 (103 S. E. 253). "The broad statement that mandamus will not issue to compel the performance of a discretionary duty is misleading. It is true that where an officer has discretion whether to act or not, mandamus will not compel the act. But the issue of mandamus is not always incompatible with a duty involving discretion, as is illustrated by the following classes of cases: (1) Where there is discretion to choose between different courses of action, mandamus can require the choice to be made. (2) Where, in such a case, the choice is exercised arbitrarily, mandamus will correct the abuse of discretion. French *v.* Jones, 191 Mass. 522, 78 N. E. 118. See 15 Harvard Law Rev. 403. (3) Where the act is imperative but there is discretion as to the method of doing it, mandamus will order the act done. People *v.* Supervisors of Queens County, 142 N. Y. 271, 36 N. E. 1062; People *v.* Comm'rs of Highways, 158 Ill. 197, 41 N. E. 1105; People *v.* Board of Supervisors, 294 Ill. 579, 128 N. E. 645." 37 Harvard Law Review, 777.