KINMAN *et al. v.* MONK *et al.*

No. 9904.   JULY 11, 1934.

*R. L. Maynard* and *Duncan & Nunn,* for plaintiffs.
*Felton & Felton* and *C. L. Shepard,* for defendants.

BECK, P. J.   On June 2, 1933, under authority of an order of the board of education of Macon County, calling an election in the Marshallville Consolidated School District in that county for the election of two members of the board of trustees of the school district, such election was held.   There were three candidates for the two places on the board, namely, C. W. Kinman, incumbent, B. B. Murph, incumbent, and S. O. Monk.   It was conceded that B. B. Murph was elected.   On the face of the returns C. W. Kinman received 129 votes, and S. O. Monk received 115 votes.   Thus on the face of the returns B. B. Murph and C. W. Kinman were elected. Thereafter, on June 15, 1933, Monk, the losing candidate in the election, served a notice on Kinman that he would contest the election, the notice stating that contestant would take evidence in support of his contest on June 22, 1933, before W. H. Gardner, clerk of the superior court of Macon County, acting as commissioner. The notice of contest set out certain grounds of contest, naming certain voters who were alleged to have voted in the election, and claiming that the ballots cast by such voters were illegal.   The no tice of contest was not sworn to; no affidavit as provided in § 122 of the Code of 1910 accompanied the notice.   Thereafter, on June 22, 1933, the taking of evidence was commenced, as stated in the notice of contest, and the taking of evidence before the commissioner was concluded on June 24, 1933.   Contestant, through his attorneys, then and there announced that the case of contestant was closed.

On June 30, 1933, Kinman, contestee, served on Monk, contestant, a notice of counter-contest, the notice being in terms of the law and being properly verified by the affidavit of the contestee. The notice stated that the contestee would commence to take testimony in support of the counter-contest before W. H. Gardner, as

commissioner, on July 6, 1933. On July 6, 1933, while contestee was submitting evidence in behalf of his counter-contest, the contestant, Monk, by and through his attorneys, presented and read to the commissioner an amendment to the original notice of contest. This amendment set up new grounds of contest different from the original grounds; it gave the names of voters claimed to have voted in the election and whose ballots it was claimed were illegal and should be thrown out. It asked that the ballot-box be opened and the ballots of the voters named be exposed and examined in the presence of the commissioner. The amendment was not verified by any one. Contestee, Kinman, through his attorneys, objected to the allowance of the amendment and its consideration by the commissioner, and objected to the submission of any evidence by contestant in support of same, upon several grounds, which may be summarized as follows: (1) The amendment setting up new and distinct grounds of contest and challenging the ballots of an entirely new and distinct group of voters named therein was presented, and it was sought to submit evidence in support of same, after contestant had closed his case, and after more than thirty days had expired from the date of the election on June 2, 1933. (2) The contestant, having concluded his testimony in support of his original contest, having closed his case, he could not offer additional testimony in support of his original contest or of the grounds of contest contained in the amendment. (3) Contestant had not given the statutory five days' notice to contestee of his intention to submit the amendment or to offer evidence in support of the new grounds of contest laid therein.

The contestee in the meantime concluded his evidence in behalf of his counter-contest, and announced that the case for the contestee was closed. Thereafter the contestant read and urged his amendment and the grounds set out therein, as well as the names of the voters enumerated therein whose ballots were claimed to be illegal, and the demand that the commissioner go into the ballot-box or permit contestant to go into the ballot-box, withdraw, expose, and examine the ballots to determine for whom said ballots were cast in the election. W. H. Gardner thereupon announced that it was his purpose as commissioner to permit contestant to open the ballot-box to withdraw, expose, and examine all of the ballots cast by the voters enumerated in the amendment, to determine for

whom the ballots were cast. Before this was done contestee, C. W. Kinman, together with H. H. Richard, T. S. Taylor, and A. H. Clarke, citizens, taxpayers, and voters of Macon County, whose names were listed in the amendment as having cast illegal ballots in the contested election, sought and obtained from the judge of the superior court of Macon County and order temporarily restraining and enjoining S. O. Monk, contestant, and W. H. Gardner, commissioner, from examining the ballots of petitioners and others named in the amendment, and from disclosing in any way how petitioners or any other parties named in the amendment voted in the election; also restraining and enjoining Monk, the contestant, and Gardner, commissioner, from submitting and considering any evidence in support of either the original contest or any ground of the amendment. At the interlocutory hearing on the petition an amendment was presented and allowed, subject to demurrer, raising the point that Monk, contestant, did not pay his poll-tax for the year 1931 until March 1, 1933, and therefore he was ineligible to be a candidate in the election on June 2, 1933; that Monk having failed to pay his poll-tax for 1931 six months prior to the holding of the election, he was not qualified to vote in the election and was ineligible to hold the office for which he was a candidate in the election; and that since he was not a qualified voter in the election and not eligible to hold the office, he had no right to proceed with the contest. It was further prayed that Monk and his attorneys at law be restrained and enjoined from further prosecuting the contest, and that further proceeding on said contest be enjoined and restrained. Plaintiffs offered the sworn petition and amendment in evidence, together with certain other evidence set out in the bill of exceptions. Monk filed an answer and a demurrer. No evidence was offered for the defendants. Upon consideration of the pleadings and evidence the judge passed an order denying the prayers for injunction and dissolving the temporary restraining order previously granted. The plaintiffs excepted.

This court is of the opinion that the court below did not err in refusing an injunction. Without taking up in detail the exceptions to the judgment, it is sufficient to say that the court properly refused the injunctive relief prayed for, because to have granted the injunction in this case would have been contrary to the rulings made in other cases presenting the same question. "Elections be-

long to the political branch of the government, and courts of equity will not interfere to protect a purely political right. *Harris* v. *Sheffield,* 128 *Ga.* 299, 303 (57 S. E. 305); Walls *v.* Brundidge, Ann. Cas. 1915C, 980, note and authorities cited (109 Ark. 250, 160 S. W. 230); Dallas *v.* Dallas Consolidated Electric Street R. Co., 105 Tex. 337 (148 S. E. 202)." *Printup* v. *Adkins,* 150 *Ga.* 347 (103 S. E. 843). And the same principle was laid down in *Avery* v. *Hale,* 167 *Ga.* 252 (145 S. E. 76). In *Harris* v. *Sheffield,* supra, it was said: "Elections belong to the political branch of the government, and are beyond the control of judicial power. It was not designed, when the fundamental law of the State was formed, that either department of government should interfere with the control of the other; and it is for the political power of the State, within the limits of the constitution, to provide the manner in which elections shall be held. And until the courts are empowered to act, by the constitution or legislative enactment, they must refrain from interference. Dickey *v.* Reed, 78 Ill. 271. Where the power to decide a contest is lodged with a judicial officer, it has been held that the function is political, and not judicial, and that no writ of error will lie from his decision. *Carler* v. *Janes,* 96 *Ga.* 280 [23 S. E. 201]; *Tupper* v. *Dart,* 104 *Ga.* 179 [30 S. E. 624]." See also *Kemp* v. *Ventulett,* 58 *Ga.* 419. And many other cases might be cited. Some of them, it is true, related to the election of municipal officers, but the principles ruled under the questions presented in the record are applicable to the present case, which falls within the ruling that elections belong to the political branch of the government, and that courts of equity will not interfere to protect a purely political right.

*Judgment affirmed. All the Justices concur.*